Henry A. PAYTON, Plaintiff-Appellant,

v.

BI–STATE DEVELOPMENT AGENCY, a Corporation, Defendant-Respondent.

No. 32697.

St. Louis Court of Appeals.

Missouri.

June 13, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied July 7, 1967.

Application to Transfer Denied Sept. 11, 1967.

The collision occurred on September 27, 1966, at approximately 4:30 p.m. Plaintiff was employed as a taxicab driver and at the time in question, was operating his cab in a westerly direction on Pine Street in the downtown area of St. Louis. · Pine Street was a one-way street for westbound traffic having a total of four traffic lanes. Plaintiff was operating his cab in the lane next to the south curb of the street. The weather was clear and the street pavement was dry.

At said time, defendant, through its duly authorized agent and driver, was operating its bus in a northerly direction on Seventh Street. Seventh Street is one-way for northbound traffic and intersects Pine Street at right angles. It also has four traffic lanes. The intersection is controlled by traffic lights. Just prior to the collision, the bus had been stopped by its driver either to load or unload passengers at the southeast corner of the intersection. When this was accomplished, the bus moved forward to the point of collision. During this time, the driver of the bus was engaged in the process of changing the line of travel of the bus from the east curb lane into the next lane to the west. The collision occurred when the right side of the bus was two to three feet west of the east curb line. Defendant's driver stated that the front of the bus when it collided with plaintiff's cab had reached a point about three feet north of the south curb line of Pine Street.

Photographs of the bus which were introduced in evidence show that the front and right side of the bus do not form a right angle, but rather that the portion forward of the front door describes a curve, leading from the flat side of the bus into the front surface. The damage to the bus, as shown by the photographs, started at the right front corner slightly forward of the front door and extended approximately one-quarter of the way around the front of the bus. (Defendant's Exhibits 3 & 4.) The damage to the cab was to the left front bumper, left front fender, left side and door.

Lusser, Hughes & Lusser, Rene E. Lusser, St. Louis, for plaintiff-appellant.

John A. Walsh, Jr., St. Louis, for defendant-respondent.

ANDERSON, Presiding Judge.

Plaintiff, Henry A. Payton brought this action against defendant, Bi-State Development Agency, for damages for personal injuries alleged to have been sustained by him in a collision between an automobile operated by him and a bus owned and operated by defendant, which said collision was alleged to be due to defendant's negligence. Defendant, with its answer, filed a counterclaim for the damage to its bus which resulted from said collision. The trial below resulted in a verdict in favor of defendant on plaintiff's cause of action and in favor of defendant for one dollar on its counterclaim. Judgment was thereafter entered from which judgment plaintiff prosecutes this appeal.

Plaintiff testified that when he was approximately one-half block east of the intersection the traffic light changed from green to red for westbound traffic, and that he brought his cab to a complete stop in the south curb land in obedience to said traffic light. He stated his was the first vehicle stopped in the curb lane; that he was stopped about five or six feet east of the east curb line of Seventh Street for approximately forty to sixty seconds; that while stopped waiting for the green light, he observed defendant's bus stopped at a point approximately eight to fifteen feet south of the intersection; that persons were either entering or leaving the bus at that time; that when the traffic light changed to green for westbound traffic, there were pedestrians in front of his cab crossing the street from north to south; that after these pedestrians passed he started his cab forward intending to proceed through the intersection; that he looked to his left and saw the doors of the bus closing and the bus starting to slowly roll forward; that it was then six or eight feet from the intersection; and the front of his cab was either at or west of the east curb of Seventh Street; that at the time he thought the bus would stop for the red light, and he kept rolling forward; that he attained a maximum speed of five miles per hour or less and observed the bus a third time just a split second before the impact at which time he applied the brakes and was almost successful in stopping his cab before it was hit by the bus.

Louis Collins who was also a cab driver testified for plaintiff. He stated that prior to the collision he was in the south curb lane of Pine Street two or three car lengths behind plaintiff when the latter started forward toward the intersection after the traffic light changed to green. He first saw the bus when it was about three feet from the intersection and plaintiff was not quite into the intersection. Thinking that plaintiff did not see the bus he blew the horn of his cab to attract plaintiff's attention. He saw the collision. At that time, the traffic signal was green for westbound traffic on Pine Street.

Anton Becker, another cab driver, was proceeding west on Pine Street just prior to the collision. He was in the traffic lane to plaintiff's right. When he reached Seventh Street, the traffic light was "go" for westbound traffic. He stated that plaintiff had barely "pulled out" when the bus struck him. The traffic light was green for westbound traffic at the time.

Defendant's bus driver, Raymond C. Bell, was called as a witness for defendant. He testified that approximately a minute before the collision the bus was in the bus loading zone about eight to ten feet south of the south curb line of Pine Street. He was at the time taking on or unloading passengers. He stated that when this was accomplished, he closed the bus door, observed the traffic light to be in his favor, and started out into traffic; that he edged the bus up to the intersection and to his left toward the second lane; that while doing this he watched the traffic to his left; that he did not see plaintiff, or any westbound vehicles on Pine Street, either stopped or moving; that the sidewalk on the east side of Seventh Street was five or six feet wide and that he could see eastwardly on Pine Street for that distance and "maybe" one foot more; that he did not see plaintiff's cab until the collision had taken place; that after the collision he stopped the bus; that at the time of the collision the bus was "creeping about one mile per hour;" and that under the conditions existing at the time, and with safety to the passenger, he could have stopped the bus in less than a foot.

Defendant produced two witnesses who were passengers on the bus who testified that the traffic signal was green when the bus entered the intersection. Another passenger testified that northbound cars passed the bus as it proceeded toward and into the intersection. Still another witness testified that when the collision occurred, he arose from his seat and observed westbound traffic on Pine Street stopped.

By Instruction No. 3, plaintiff submitted his case to the jury on the theory that defendant was guilty of primary negligence in violating the traffic signal, failing to keep a careful lookout or failing to stop. He also by Instruction No. 5 submitted humanitarian negligence in failing to stop. Defendant submitted its counterclaim by Instruction No. 4 which predicated liability on a finding of negligence in violating the electric traffic signal.

Appellant's first assignment of error relates to the action of the trial court in giving, at defendant's request, Instruction No. 3A. Said instruction was a converse of plaintiff's Instruction No. 3. The latter submitted primary negligence and by its terms directed a verdict for plaintiff if the jury should believe the defendant was negligent in that he either violated the traffic signal, or failed to keep a careful lookout, or failed to stop, and that said negligence caused plaintiff's damage.

Instruction No. 3A reads as follows:

"Your verdict must be for defendant on plaintiff's claim for damages unless you believe that defendant's conduct was negligent as submitted in Instruction Number 3."

The court also gave, at defendant's request, Instruction No. 3B, which submitted the defense of contributory negligence on the part of plaintiff. It directed a finding for defendant, whether or not defendant was negligent, if the jury should believe plaintiff was negligent in that he either violated the traffic signal or failed to keep a careful lookout, and that said negligence directly caused or directly contributed to cause any damage plaintiff may have sustained.

By Instruction No. 5, plaintiff submitted humanitarian negligence. The instruction was in the form of MAI No. 17.14, and the negligent act hypothesized was failure to stop after defendant knew or could have known of plaintiff's position of immediate danger.

The Court also gave, at plaintiff's request, Instruction No. 4A, which submitted the defense of contributory negligence to defendant's counterclaim. It directed a verdict for plaintiff whether or not plaintiff was negligent, if the jury should believe that defendant was negligent by either violating the traffic signal, or failed to keep a careful lookout, or failed to stop the bus, and that said negligence directly caused any damage defendant may have sustained.

Plaintiff's complaint against Instruction No. 3A is that said instruction, being a converse instruction to plaintiff's submission of primary negligence is erroneous because it completely ignores plaintiff's humanitarian submission and directs a verdict "on plaintiff's claim for damages" if the jury should find defendant not guilty of the primary negligence submitted by Instruction No. 3.

Defendant contends that the giving of Instruction No. 3A was not prejudicial error for the following reasons:

A. Plaintiff failed to prove a case of humanitarian negligence for failure to stop.

B. Since Instruction No. 3 hypothesized failure to stop as a ground for recovery, and Instruction No. 5 authorized a verdict solely on failure to stop, there could be no error in giving Instruction No. 3A because the primary negligence submitted includes within its ambit humanitarian failure to stop.

C. When plaintiff's Instruction No. 4A, which was directed to the counterclaim and submitted defendant's failure to stop as an act of contributory negligence, is considered with the fact that a verdict was returned for defendant on its counterclaim it is apparent that the jury did not believe defendant was negligent in failing to stop; hence the giving of In-

struction No. 3A cannot be considered as prejudicial error.

D. That from the numbering of the instructions, it was apparent to the jury that 3A referred only to Instruction No. 3, and that the jury would consider that 3A merely authorized a finding against plaintiff under Instruction No. 3 instead of a verdict "on plaintiff's claim for damages," which, of course, included a claim submitted by humanitarian Instruction No. 5.

■ Considering the evidence most favorable to plaintiff, as we must in determining whether a case was made under the humanitarian doctrine, we find the facts hereinafter stated. Plaintiff brought his automobile to a stop five or six feet east of the east curb line of Pine Street where he waited for the traffic light to change favorable for westbound traffic; that when the light changed to green he started forward intending to proceed through the intersection; that the bus was at that time 6 or 8 feet from the intersection; that when he reached the east curb line the doors of the bus were being closed and the bus had started to roll forward; that the bus driver, had he looked forward at that time could have seen plaintiff proceeding toward the path of the bus with increasing speed and observed the red light against northbound traffic; that there was evidence from which a jury could find that plaintiff was unaware of the bus driver's intent to enter the intersection against the red light, and was therefore oblivious of the impending danger of collision, which fact would have been apparent to the bus driver; that the bus moved forward at a speed of about one mile an hour, at which speed it could have been stopped with safety to the driver and his passengers in less than one foot.

■ It is our view, on the evidence, and the inferences the jury could reasonably draw from it, that plaintiff made a case on humanitarian negligence. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482.

■ The general rule is that where plaintiff has submitted his case on both primary and humanitarian negligence, an instruction which directs a verdict for defendant and ignores plaintiff's right to recover under the humanitarian theory is erroneous. Sauer v. Winkler, Mo., 263 S. W.2d 370; Wabash R. Co., v. Dannen Mills, Inc., 365 Mo. 827, 288 S.W.2d 926; MAI 29.01 general comment with respect to converse instructions.

■ In the case at bar, Instruction No. 3A was a converse instruction which directed the jury that if they found defendant was not guilty of the primary negligence submitted by plaintiff's Instruction No. 3, their "verdict must be for defendant on plaintiff's claim for damages." By directing a "verdict" instead of authorizing a "finding" and ignoring the humanitarian submission under Instruction No. 5, which was a part of plaintiff's claim, the instruction was clearly erroneous, under the above cited authorities. The direction of a verdict should have been eliminated, or it should have included the phrase "unless you find for plaintiff" under Instruction No. 5. Sauer v. Winkler, supra.

But defendant contends that since plaintiff hypothesized failure to stop as a basis of recovery under his primary submission, Instruction No. 3A was correct because defendant could not be found negligent under the humanitarian doctrine as submitted, if found free from negligence for failure to stop under Instruction No. 3.

■ We find no merit to the point made. Instruction No. 3A was a positive misdirection in that by its terms the jury was limited to a consideration of the issue of the primary negligence submitted, and directed a verdict if the proof was not sufficient to establish same. Then by Instruction No. 3B, the issue of plaintiff's alleged contributory negligence was submitted as a complete defense to the charge of negligence submitted. If the jury chose to follow these two instructions they would con-

sider themselves bound to return a verdict without regard to the humanitarian charge. If the jury considered all the instructions including No. 5, they would have a choice to ignore either No. 3 or No. 5, for said instructions were certainly conflicting. Both could not be followed. Thus a very confusing situation was created. Such ineptness as exhibited here should not be excused on the ground now advanced by defendant in this court. It would have been a simple matter to have drafted a proper instruction if defendant's counsel had taken the care to read the general comment dealing with converse instructions set out in MAI 29.01. A litigant has the right to have the jury properly instructed. This is not a difficult task under the Missouri Approved Jury Instructions. Instructions should not be so worded as to be conflicting. Nor should words be used with the expectation that the jury will give them a meaning different from their accepted meaning, such as the use of the word, "verdict" instead of the word "finding" as was done in this case. It does not clearly appear that the jury found defendant was not negligent in failing to stop. It is just as reasonable to suppose that the defendant's verdict was based upon plaintiff's alleged contributory negligence. We should not be expected to reach a conclusion on this vital aspect of the case through speculation and conjecture. Nor do we believe that the instructions were clarified by the system of numbering and lettering employed. The giving of Instruction No. 3A was error which must be classified as prejudicial.

Since the judgment must be reversed and the cause remanded for new trial because of error in giving Instruction No. 3A, we need not consider other errors assigned. Prior to another trial, counsel will have an opportunity to examine the matters complained of and take such action as will render any claim of errors unavailing.

The judgment is reversed and the cause is remanded.

RUDDY and WOLFE, JJ., concur.