**Logan A. WOODLEY, Jr., d/b/a Woodley Boiler and Welding Co., Plaintiff-Respondent,**

**v.**

**Jeanette ESSLINGER, Defendant-Appellant.**

**No. 25373.**

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Philip C. Ehli, Kansas City, for defendant-appellant.

James T. Seigfreid, James M. Beck, Dietrich, Davis, Burrekk, Discus & Rowlands, Kansas City, for plaintiff-respondent.

FLOYD L. SPERRY, Special Commissioner.

This lawsuit was begun in magistrate court.

Plaintiff is a licensed boiler maker and is engaged in operation of a business known as Woodley Boiler & Welding Co., in Kansas City, Mo. Defendant has two apartment houses in Kansas City, each having six apartments therein. One of these houses was located at 3736–38 Wabash.

Plaintiff alleged in his petition that, in January, 1968, at the request of defendant, he furnished certain labor and materials for the repair of the furnace in the above apartment house. He further alleged that, although demand had been made for payment, payment had not been made. He filed petition praying for judgment in the sum of $250.90 which, he alleged, was the reasonable value of labor and material furnished to defendant.

Defendant filed answer. In the first paragraph she denied all allegations of the petition and, in the second, she alleged that, in all work performed by plaintiff, he used "improper material and exercised poor and improper workmanship".

She also filed a counterclaim. She alleged that the apartment here involved contained six liveable units; that, during January, 1968, defendant requested plaintiff to make and perform certain repairs to the "boiler furnace" situated therein; that plaintiff entered the premises and "started to make the necessary repairs"; that plaintiff "Carelessly and negligently incompletely performed the repairs; and that, as a proximate result of the negligent repair of the boiler, defendant suffered damages as herein set forth". In paragraph four of her counterclaim she states as follows:

"That the defendant incurred additional expense from material and labor to correct defective repairs that the Plaintiff has made; that the Defendant lost the benefit of rents and profits from the reasonable rental value of such apartment units and that as a result of this defective repair the pipes froze causing extreme damage to all of the interior of the apartments all to her damage in the sum of Two Thousand ($2,000.00 Dollars".

Judgment in the magistrate court was for plaintiff in the sum of $250.90. (No mention of defendant's counterclaim was made by the court).

Defendant appealed to circuit court where a trial was had without a jury. Both parties were present and both offered evidence. The court found for plaintiff on his petition and rendered judgment against

defendant in the amount of $188.65. The court found the issues for plaintiff on defendant's counterclaim. No findings of fact were requested or made. Defendant appealed to this court.

Defendant contends that the circuit court obtained no jurisdiction of the case on appeal because the magistrate court made no mention or disposition of her counterclaim; that the circuit court should have remanded the cause to the magistrate court for disposition of all of the issues presented. She also urges that the circuit court should have remanded the cause to the magistrate court because, as she contends, she was not in default in magistrate court but had pleaded and was present at the trial, and that plaintiff had offered no evidence in that court.

■ We rule these contentions adversely to defendant. Secton 512.270, R.S.Mo. 1959, V.A.M.S. provides as follows:

"512.270. Circuit court to try case.— Upon the return of the magistrate being filed in the office of the circuit clerk, the court shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection on the trial, judgment or other proceedings of the magistrate or sheriff in relation to the cause".

The effect of defendant's appeal from the judgment of the magistrate court was to cause a *de novo* trial in circuit court. Aubuchon v. Ayers, Mo.App., 400 S.W.2d 472, 473, 476. The circuit court would consider the cause as though it had been originally filed in that court.

In the trial below, plaintiff was his own sole witness. He identified his exhibits, one through six, as being work sheets made up by various of his employees who worked on this furnace. These exhibits are small note size sheets of plain rough paper bearing no information except that which appears thereon in lead pencil writing. Plaintiff stated that he was never present when any of his workmen were working on this job but that he had visited the job site on three different occasions.

He stated that, when a call comes in requesting services such as his business renders, one or more of his employees answers the call and, at the close of each working day, each of them fills out a work sheet showing name, date and time worked, and materials used. He stated that, from such work sheets, he made up his business records, showing the charges made on each job performed.

He testified and interpreted Exhibit one. It bears the name "Hugh" which, plaintiff said, was his workman Combow. He said it showed: "Jan. 26th, 3738 Wabash, roll all tubes, use five 3 inch 48⅝ tube, 6". He interpreted this exhibit to mean that his employee, Combow, went to defendant's premises on January 26th, and worked six hours; that he rolled all the tubes and replaced five tubes with three inch tubes 45⅝ inches long.

Plaintiff also interpreted and explained the remaining group of six exhibits. Each of them contained information regarding the name of the workman, the date and hours that he worked on this job, what he did and the kind and quantity of materials used.

Plaintiff also identified and gave testimony regarding his Exhibit 7, which is entitled "work order". The printed form contains hand writing in ink which, plaintiff stated, indicated that six three inch tubes, 48⅝ inches long were used. The cost charged for this material, as shown on the Exhibit was $34.50, seventeen hours of labor at $8.00 per hour, $136.00; oxygen, $1.00; total $176.50. In another portion of the Exhibit appears a charge of $12.15 for installing a thermocouple in boiler. The "total" charge shown was $188.65.

Plaintiff stated that this exhibit was prepared in his office from exhibits one through six heretofore mentioned and that all such exhibits are a part of his business records, regularly kept in his office. He

stated that, when he visited defendant's apartment house there were some broken windows in the building.

Defendant testified to the effect that she owned and operated two apartment houses, number one located at 3736–38 and number two at 4042, Wabash; that in January, 1968, there was trouble with the number one furnace; that there was water in it; that she called plaintiff's place of business and requested that plaintiff repair it; that plaintiff's workmen did some work on it, but that she continued to have the same trouble with it; that the boiler was still leaking after the work was completed; that she again called plaintiff and told him that the boiler was still leaking and requested that he fix it; that plaintiff only made two trips, one on January 26th, and the other on January 30th; that she called him after January 30th and told him that the boiler was still leaking and in the same condition that it was in when she first called; that there as no heat in the house and that the boiler as full of water; that he said that she had not paid the bill; that she told him that he had not repaired the boiler; that she would pay him when he had done so; that plaintiff said he did not know if the boiler could ever be repaired; that she would probably have to buy a new boiler.

She stated that the boiler-furnace was the only source of heat available for the apartment; that she had employed two men who, regularly, made repairs on her apartments; that they replaced broken windows and made other repairs; that in January, 1968, all apartments in the building were occupied but; because of the lack of heat, all tenants excepting one moved out; that one tenant could not find an apartment; that, she had a kitchen stove and managed to live in the apartment; that the plumbing froze in all of the other apartments; that, as a result, she hired a plumber to repair the plumbing, and also hired two workmen to redecorate five of the apartments; that she called Bilderback Welding & Boiler Service; that workmen from this company satisfactorily repaired the boiler; that she paid Bilderback on February 11th, 1968. She identified a bill, on stationery of the Bilderback Company, dated February 11th, 1968, marked paid. She stated that she paid Bilderback $64.40 in cash. She stated that she was present when this work was done and that, thereafter, the boiler and furnace worked properly.

Defendant testified regarding material bought and used to make repairs in the house due to the freezing of the plumbing. She stated that the plumbing froze at various places and water ran down on ceilings and elsewhere; that she paid out several hundred dollars for materials and supplies for repairs, and produced paid bills therefor; that such freezing occurred after plaintiff had worked on the boiler; that she had the apartments repaired and redecorated one at a time; that it required from thirty days to six weeks to do all of the repairs; that, after an apartment was ready, she promptly rented it; that she paid Mr. Corrender $30.00 each to redecorate five apartments; that she paid Mr. Hudgins to plaster and install plaster board, $65.00 each for five apartments, and $30.00 for painting each apartment. She stated that she "lost" $380.00 rent as a result of the failure of the furnace and of plaintiff's negligence in making repairs. She stated that the furnace failure was due to the boiler leaking and extinguishing the fire in the furnace.

Mr. Corrender stated that he had worked at defendant's apartment house from time to time; that, some plumbing froze in the building; that, as a result thereof, plaster fell off, that there was no heat, and that pipes froze; that he painted some of the rooms after plumbing repairs were made; that he was paid $30.00 each for painting five apartments; that he had regularly done general maintenance work at the apartment; that he had repaired broken windows and did general repair work; that,

after plaintiff repaired the boiler, it still leaked; that he saw water leaking from the boiler; that the water extinguished the pilot light.

Mr. Hudgins stated that he had done work for defendant over a period of eight years; that he worked for her in making repairs after the plumbing froze; that he is a qualified steam fitter; that he was formerly licensed as such; that the boiler was leaking in the soft plug; that the tubes were leaking; that the water extinguished the gas fire, both pilot and the main burner.

The petition herein stated a cause of action in *quantum meruit* and the cause was tried on that theory. Poppa v. Poppa, Mo.App., 364 S.W.2d 52, 55.

Defendant moved for "directed verdict" during the course of the trial. The second time she so moved was at the close of all of the evidence. One of the reasons urged in support of the motion was that plaintiff failed to offer *any* evidence tending to prove that the sums charged for labor and material furnished by him was *reasonable,* or that the *reasonable* value of such materials and labor was $188.65, or any other sum. There was no evidence whatever to the effect that the reasonable value of seventeen hours of labor for which recovery was sought was $8.00 per hour, which is the amount for which he sued and which he recovered. There was no evidence that the reasonable value of six three inch tubes 48⅝ inches long was $34.50, the amount sued for and recovered. The record is completely silent concerning the reasonable value of installing a thermocouple in the boiler. Plaintiff recovered judgment of $12.15 for that item. He also recovered $1.00 for oxygen, under the same evidence, or lack of evidence.

In Tomasso v. Sorbets, St. Louis, Mo. App., 147 S.W.2d 151, the court considered an action in *quantum meruit*. The judgment was reversed and the cause remanded. At page 153 the court stated:

"As for Instruction No. 5, it suffices to say that it omitted any requirement for a finding by the jury of the *reasonable value* of the services, which was the test by which plaintiff's recovery was to be measured in an action upon *quantum meruit* * * *". (Emphasis ours)

In Rodgers v. Levy, Mo.App., 199 S.W. 2d 79, the judgment was reversed and the cause remanded. At page 82, the court said:

"Quantum meruit means 'as much as he had deserved,' and the burden is on the claimant to plead, prove, and have the jury instructed, that his charges are fair and reasonable. Fuhler v. Gohman & Levine Const. Co., supra [Mo., 142 S.W.2d 482]; Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co., Mo. Sup., 201 S.W. 864; McCullough v. Baker, 47 Mo. 401; Ehrlich v. Aetna Life Ins. Co., 88 Mo. 249; Hutchinson v. Swope, Mo.App., 256 S.W. 134; Joern v. Bang, Mo.App., 200 S.W. 737. One of the principal cases cited by respondent is Fuhler v. Gohman & Levine Const. Co., supra [142 S.W.2d 484], which states the rule in these words: 'The law is well established what where a contractor is prevented by the other party from fulfilling a building contract he may recover reasonable compensation for his work and labor regardless of the contract price.' Nevertheless, there was not a scintilla of evidence that plaintiff's expenditures for labor and material were the reasonable value thereof, and plaintiff's instructions authorized a recovery merely upon a showing that plaintiff hired labor which was actually used and paid for materials which were actually used, without limiting such recovery to the reasonable value of such labor and materials. * * *".

█ It is also noted that there was no testimony from any witness who was present when the repairs were made by plain-

tiff's workmen. Plaintiff was his only witness. He was not present when the repairs were made. He was asked if the boiler was "fixed" and answered that the workmen were there and the material was used, as his records showed. Defendant offered evidence strongly tending to prove her contention that the boiler was never properly repaired and that plaintiff refused to send other workmen to fix it so that it would not leak. In the state of the evidence, there is a grave question as to whether the labor and materials furnished by plaintiff were of *any* reasonable value to defendant.

Defendant's evidence strongly indicates that she suffered substantial damages because of the failure of plaintiff to make effective repairs on the furnace after he assumed the obligation to do so. Plaintiff offered no evidence tending to controvert defendant's evidence in this respect. Plaintiff, himself did not see fit to deny defendant's sworn statement to the effect that, when she last called and requested that the boiler be repaired, telling plaintiff that it was still leaking, and that plaintiff then stated that it probably could not be repaired, that she might have to buy a new furnace. There was also uncontroverted evidence by defendant (it does not appear why she did not produce Bilderback as a witness) to the effect that Bilderback Welding and Boiler Company made satisfactory repairs for a charge of $64.40.

The judgment is reversed and the cause is remanded.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of FLOYD L. SPERRY, Special Commissioner, is adopted as the opinion of the Court.

All concur.