The CURATORS OF the UNIVERSITY OF MISSOURI ex rel. SHELL–CON, INC., a corporation, Plaintiffs-Respondents,

v.

NEBRASKA PRESTRESSED CONCRETE COMPANY, a corporation, et al., Defendants-Appellants.

No. 35185.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 5, 1975.

Anderson, Gilbert, Wolfort, Allen & Bierman, Stuart M. Haw, Jr., St. Louis, for defendants-appellants.

Deeba, DeStefano, Sauter & Herd, James B. Herd, Madigan, Hadican & Maloney, St. Louis, Paskel, Edwards, Olian & Hadican, J. Martin Hadican, Clayton, for plaintiffs-respondents.

GUNN, Judge.

We consider here an action in quantum meruit brought by the relator-respondent Shell-Con, Inc. (Shell-Con) for work performed in constructing the Warren E. Hearnes Multi-Purpose Fieldhouse at the University of Missouri-Columbia. Suit was brought on two alternative counts, one based on the contract Shell-Con entered into with defendant-appellant Nebraska Prestressed Concrete Co. (Nebraska Prestressed), and the other in quantum meruit. Shell-Con elected to proceed at trial on only the quantum meruit theory, seeking damages of $100,000 plus interest. Joined as defendants were Alfred Lindgren, Inc., the general contractor of the entire project, in its capacity as principal on a performance bond, and Pennsylvania Insurance Co. in its capacity as surety. The jury returned a verdict for Shell-Con for $87,000 plus costs, which was remitted to $67,000 by the trial court. Nebraska Prestressed has appealed from the judgment against it.

Nebraska Prestressed raises several points on appeal. It claims that the verdict, even remitted by $20,000, was grossly excessive and unsupported by the evidence. It also asserts that the trial court erred in giving several instructions to the jury and in failing to give others offered by the defendant.

The ultimate act giving rise to this controversy occurred when the president of Shell-Con ordered his crew to leave the construction site after having completed approximately 80 to 85 percent of the work contracted. Shell-Con then brought suit alleging that Nebraska Prestressed had breached its contract by preventing Shell-Con from completing performance. Nebraska Prestressed answered by denying that it breached the contract and asserted as an affirmative defense that Shell-Con, by voluntarily abandoning the contract, had committed the breach.

The basic facts involved in this controversy are not in conflict. In January 1969, defendant Alfred Lindgren, Inc. entered into a contract with the Curators of the University of Missouri for the construction of the Warren E. Hearnes Multi-Purpose Fieldhouse to be situated on the University's Columbia campus. Subsequently, Alfred Lindgren, Inc. contracted with defendant Nebraska Prestressed for the manufacture and installation of precast concrete exterior wall units and seat units. On February 26, 1969, Nebraska Prestressed subcontracted the installation work to the plaintiff Shell-Con. It is the contract between Shell-Con and Nebraska Prestressed on which this litigation centers. Under the terms of the contract, Nebraska Prestressed agreed to manufacture the precast concrete units and deliver them to the job site. Shell-Con agreed to unload the units and set them into place. The contract price for the completed work was $167,000.

During negotiations with Nebraska Prestressed, Shell-Con insisted that conditions at the work site be in a proper state of readiness so that Shell-Con would be able to proceed with its work in a continuous and sequential fashion. Shell-Con had projected that its work would be completed within four to six months; that if Shell-Con were unable to proceed in a sequential order around the structure, it would be forced to move its equipment, including a large crane, from one work area to a noncontiguous area, which would be a time consuming and costly procedure. Several provisions were incorporated into the contract to avoid these problems, including the following requirements: 1) that suitable access to work

areas for equipment and material trucks be provided; 2) that all materials furnished by others be delivered by truck to the point of erection; and 3) that delivery of materials be scheduled and coordinated to ensure and maintain continuous and sequential operation.

The saga of Shell-Con's performance is replete with false starts and continual delays without fault on the part of Shell-Con. Although Shell-Con was scheduled to begin the erection work in August, 1969, it was not ordered onto the job until September 15, 1969. Several days prior to September 15, Shell-Con notified Nebraska Prestressed that an inspection revealed that the structure would not be ready to receive the wall panels until October. Despite the warning, the general contractor told Nebraska Prestressed to order Shell-Con onto the job. The structure was not ready and Shell-Con was not able to commence its work. It was forced at substantial expense to dismantle and remove the large crane it had readied for the work. It was not until October, 1969 that Shell-Con actually began to install the wall panels. The crew was forced to stop working on December 19, 1969 because the structure again was not ready to receive the precast concrete panels. Shell-Con resumed work in January and remained at the job site until July 24, 1970 at which time Mr. Shell, president of Shell-Con, ordered his men to leave the construction site. Throughout the various intervals that Shell-Con worked, the crew experienced continual problems with the steel structure being out of plumb. There were also problems with the poured-in-place concrete not being properly laid. These difficulties created continual delays and forced Shell-Con to work out of sequence. In addition to the problems with the structure and the poured-in-place concrete, there were access problems relating to the installation of the seats. According to the contract, the seats were to be installed from inside the fieldhouse. Shell-Con was unable to move its crane inside the structure be-

cause the interior was cluttered with scaffolding being used by steelworkers. There was testimony that it would take approximately 20 working days to sufficiently clear away the scaffolding to allow access for Shell-Con's crane. The breaking point, causing Shell-Con to cease work completely on July 24, was an access problem caused by an accumulation of dirt that interfered with the placement of Shell-Con's crane. Mr. Shell was also disturbed that he had not been paid for the last two months' work and for extras that had been billed to Nebraska Prestressed for work performed but not covered by the contract. A further reason given for leaving the job was Shell-Con's unwillingness to bear the burdens of continual delays. Shell-Con also believed that it could no longer rely on Nebraska Prestressed's assurances that the work would be able to continue in a sequential fashion. It is important to note that after Shell-Con stopped working, Nebraska Prestressed undertook the construction project, and the erection of the wall panels and seats was finally completed in late December, 1970, over a year after the work was begun.

■ The first point raised on appeal by Nebraska Prestressed is a claim that the jury verdict of $87,000, even remitted by the trial court to $67,000, was excessive and not supported by the evidence. Quantum meruit is defined as "as much as he has deserved." *Rolla Lumber Co. v. Evans*, 482 S.W.2d 519, 521 (Mo.App.1972); *Rodgers v. Levy*, 199 S.W.2d 79 (Mo.App.1947). The measure of recovery in this quantum meruit action depends upon which party has breached the contract. If the contractor is prevented from completing the contract because of the owner's breach, the contractor is entitled to recover the reasonable value of the work and labor furnished. *Spitcaufsky v. Guignon*, 321 S.W.2d 481 (Mo.1959); *Fuhler v. Gohman & Levine Construction Co.*, 142 S.W.2d 482 (Mo.1940); *Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co.*, 201 S.W. 864 (Mo.1918);

*Woodley v. Esslinger,* 458 S.W.2d 869 (Mo. App.1970); *Isaac v. Koenig,* 447 S.W.2d 818 (Mo.App.1969). When the contractor voluntarily ceases work or, in the construction trade vernacular, "walks off the job," when the owner has not breached, a different measure of damages is used as set forth in *Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co.,* supra at 865: "In such an action, by a defaulting contractor, he was permitted to recover; but his recovery could be reduced, under proper pleadings and proof, by the amount of damages his breach of the contract might have occasioned to the owner. Nor would he, in this kind of case, be permitted a recovery in excess of the contract price." Shell-Con proceeded on the theory that Nebraska Prestressed breached the contract by preventing Shell-Con from fulfilling its contractual obligations. Thus, Shell-Con claims it is entitled to the reasonable value of the materials and labor furnished Nebraska Prestressed. Nebraska Prestressed, on the other hand, answered by denying that it breached and asserted that Shell-Con, by walking off the job, breached the contract. Thus, Nebraska Prestressed claims that any damages the plaintiff may be entitled to must be reduced by the damages it sustained due to Shell-Con's breach. Both theories were submitted to the jury, and we believe that there was sufficient evidence to sustain the jury's finding that Nebraska Prestressed breached the contract. Although Nebraska Prestressed is not responsible under the contract for delays caused by physical problems with the steel structure and poured-in-place concrete, Nebraska Prestressed did have an obligation under the contract to provide for "suitable access to areas of work for equipment and material trucks." There were numerous instances from October 1969 through July 1970 when Shell-Con's ability to proceed with its work was impeded due to its inability to gain access to the work areas. Shell-Con's inability to move inside the fieldhouse in order to install the precast seating units and its inability to move its crane along the exterior of the structure due to accumulations of dirt are examples of the access difficulties experienced. Some delays were caused by Nebraska Prestressed's failure to comply with a clause in the contract which required that "[m]aterial deliveries [were] to be scheduled and coordinated so as to maintain continuous and sequential operation." Although Shell-Con concedes that this was not an insuperable problem, there was testimony that some deliveries by Nebraska Prestressed were not made on time. There is also a factual dispute concerning payments. Shell-Con had not received payment for work done in May and June. It also had not been paid for some of the extras billed to the defendant. Nebraska Prestressed contends that its failure to pay was not a breach, because the contract only required payment to Shell-Con after Nebraska Prestressed received payment from the general contractor. The evidence is in conflict as to whether or not Nebraska Prestressed had received money for these bills from the general contractor, and the jury was at liberty to resolve this conflict in Shell-Con's favor.

Since there was sufficient evidence that would support a finding that Nebraska Prestressed breached the contract, we next consider the valuation of Shell-Con's damages. The jury could find that Nebraska Prestressed breached the contract; hence, Shell-Con would be entitled to recover from Nebraska Prestressed the reasonable value of the work and labor furnished. *Spitcaufsky v. Guignon,* supra; *Fuhler v. Gohman & Levine Construction Co.,* supra; *Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co.,* supra; *Woodley v. Esslinger,* supra; *Isaac v. Koenig,* supra. To prove the reasonable value of the material and labor furnished, Shell-Con introduced into evidence the invoices it had billed to Nebraska Prestressed for work done pursuant to the contract through July 1970. These invoices totalled $112,550.75. At the outset of the project, Shell-Con prepared, with Nebraska Prestressed's approv-

al, an itemized cost sheet assigning a contract price to each individual aspect of the job, e. g. installation of large wall panels, small wall panels, spandrels, and other items of construction. Near the end of each month, Shell-Con would send to Nebraska an invoice that would estimate the amount of work that would be completed through the end of the month. These invoices were calibrated by listing the different types of units projected to be erected during the month multiplied by the contract price set out in the itemized cost sheet for that particular type of unit. Shell-Con conceded that these invoices were estimates at the time they were written and did not reflect the actual work completed by the end of that particular month. But if an invoice proved inaccurate, the next month's invoice would be readjusted to accurately reflect the work done in the preceding month. In addition to these invoices, Shell-Con introduced invoices totalling $25,114.72 for extra work it did over and above the contract specifications. Relying on all of its invoices, Shell-Con claims that the actual value of its work totalled $137,665.47. Shell-Con offered no other evidence as to the value of the work done. It admits having received payment from Nebraska Prestressed for $75,273.03, $63,926.77 of which covered work done under the contract, and the remaining $11,346.26 was payment for some of the extra work. Assuming that Shell-Con's invoices accurately represent the actual work done, Shell-Con would be entitled to recover $62,392.44 ($137,665.47 minus $75,273.03). Thus, the judgment as remitted is almost $5,000 over the actual value of the work and labor furnished Nebraska Prestressed and as yet not paid for. However, Nebraska Prestressed correctly contends that Shell-Con's figures do not represent the actual work it performed. This is caused by Shell-Con's invoice for July 1970, the last month it was on the job. The invoice is dated July 22, and on its face is a bill for "work completed through July 31, 1970" for the sum of $24,982.00. Witnesses for Shell-Con testified that this figure estimated the value of work it would complete through July 31, 1970. From undisputed testimony, Shell-Con left the construction site on July 24 and did not work at all during the last work-week in July. Thus, the July invoice covers work projected to be done on five working days that Shell-Con did not in fact work. This invoice cannot be used as proof of actual work performed during the month of July and by relying on it in its total invoice figure, Shell-Con has failed to show the actual value of the material, work and labor it furnished Nebraska Prestressed. We have noted that the jury verdict as remitted, is approximately $5,000 in excess of Shell-Con's own figures as to its damages. But a further remittitur will not cure the flaw in Shell-Con's proof of damages. The July invoice of $24,982, which is a substantial portion of the total judgment, is unreliable since it is based on an entire month's billing, whereas Shell-Con worked only a portion of July. Further, there is absolutely no evidence as to how much work Shell-Con did in July; we cannot speculate as to what portion of the $24,982 (if any at all) Shell-Con would be entitled to as damages. The case must therefore be remanded for Shell-Con to present accurate and reasonable evidence of the value of the work and labor furnished Nebraska Prestressed during the month of July.

▇▇▇▇ Nebraska Prestressed offered its own evidence as to the actual value of work done by Shell-Con up to July 24, 1970. Nebraska Prestressed's job coordinator, Mr. Nordquist, went to the job site shortly after July 24 and took photographs of the work that had been completed by Shell-Con. He compared these photographs with shop drawings of the project and then prepared a list of all the various units Shell-Con had installed. He then multiplied the number of units set in place by the contract price of each unit as established in the itemized cost sheet prepared by Shell-Con. He found the contract value of Shell-Con's work to be $95,907.25. Although Nebraska Prestressed

had contested the validity of some of the extra invoices, it is willing to concede that the jury found against it on this point and thereby adds $25,114.72 for extras, giving a total of $121,021.97 as the actual value of work done by Shell-Con. Subtracting the $75,273.03 that Nebraska Prestressed had already paid Shell-Con, Nebraska arrives at $45,748.94 as the maximum amount it should owe Shell-Con. Claiming that Shell-Con breached the contract, Nebraska Prestressed contends that it is entitled to subtract from the maximum figure of $45,748.94 any damages it sustained. As the measure of its damages, Nebraska Prestressed looked to the difference between the reasonable cost to complete the work Shell-Con failed to perform and the proportion of the contract price attributed to this work. Using this standard Nebraska Prestressed arrived at $24,580.56 as its contractual damages. According to Nebraska Prestressed's theory of the case, the maximum value of Shell-Con's work, $45,748.94, should be reduced by $24,580.56 to $21,168.38. The jury, of course, did not accept Nebraska Prestressed's theory of the case that Shell-Con had breached the contract.

Nebraska Prestressed also contends that Shell-Con failed to prove that the value assigned to the work and labor furnished was reasonable. In a quantum meruit case, the plaintiff has the burden of showing that the value of the work is reasonable. *Rolla Lumber Co. v. Evans*, supra; *Rodgers v. Levy*, supra. Shell-Con has met this burden by relying on the contract price for the value of the work and labor he furnished. It is well established that in an action grounded in quantum meruit, the contract price is prima facie evidence of "reasonableness." *Smith v. Ray M. Dilschneider, Inc.*, 283 S.W.2d 631 (Mo.1955); *Oliver L. Taetz, Inc. v. Groff*, 363 Mo. 825, 253 S.W.2d 824 (1953); *K–V Builders, Inc. v. Thomas*, 353 S.W.2d 130 (Mo.App.1962).

However, with regard to Nebraska Prestressed's first point on appeal—that the jury verdict in favor of Shell-Con for $87,000 remitted to $67,000 was not supported by the evidence—it is manifest, as we have previously observed, that the judgment is not supported by Shell-Con's proof. Shell-Con's July invoice is too indefinite to serve as a proper gauge for damages.

Having determined that the case be remanded, we now consider other contentions of error raised by Nebraska Prestressed. The second point raised on appeal by Nebraska Prestressed concerns Instruction No. 2 which reads as follows:

"In these instructions you are told that your verdict depends on whether or not you believe certain propositions submitted to you. In determining whether or not you believe any proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. The burden is upon Plaintiff to cause you to believe the propositions necessary to support its claim against Defendants. *The burden is upon Defendants to cause you to believe the propositions necessary to support their affirmative defense as submitted in Instruction 4.* If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition." (emphasis added). (MAI No. 3.01 Modified).

Nebraska Prestressed contends that Shell-Con, by admitting it left the job, has breached the contract; that in reality Shell-Con is pleading in confession and avoidance and thus has the burden of showing that it is entitled to avoid the consequences of its breach. Nebraska Prestressed argues further that Instruction No. 2 erroneously places the burden on Nebraska Prestressed that Shell-Con has breached the contract. Nebraska Prestressed concludes that since its affirmative defense (that Shell-Con breached the contract) has been conceded, placing the burden of proof upon it as was

done in Instruction No. 2 was incorrect and highly confusing to the jury.

■■■ Nebraska Prestressed's argument is untenable and misconceived. At no time does Shell-Con concede that it breached the contract. In its pleadings and throughout the trial, Shell-Con proceeded on the theory that Nebraska breached the contract. Merely walking off a job is not a breach of contract as a matter of law. When the owner, or someone standing in his stead, prevents a contractor from completing performance, the contractor's failure to complete his work is excused, and he is not regarded as having breached the contract. The contractor, under those circumstances, has the right to sue on the contract or elect to sue in quantum meruit for reasonable value of labor and work furnished. *Isaac v. Koenig*, supra; *Rodgers v. Levy*, supra. Nebraska Prestressed relies on the holding in *Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co.*, supra, that the defendant was entitled to an instruction placing the burden on Shell-Con to show by the greater weight of the evidence that Nebraska Prestressed prevented completion.[1] Instruction No. 2 does exactly what Nebraska Prestressed asks. The instruction's purpose is twofold: 1) Shell-Con's theory was that Nebraska Prestressed breached the contract by preventing Shell-Con from fully performing, and under Instruction No. 2 the burden of proving this breach was on Shell-Con. 2) Nebraska Prestressed asserted as an affirmative defense that Shell-Con breached the contract by failing to complete its work. Since Shell-Con did not concede breaching the contract by abandonment, the instruction properly places the burden of proving Shell-Con's breach upon Nebraska Prestressed. The instruction correctly follows MAI No. 3.01 Notes on Use which require the court to include in the burden of proof instruction a sentence placing the burden on Nebraska Prestressed of proving its affirmative defense.

The next point raised on appeal by Nebraska Prestressed is a challenge to Instruction No. 3 which Nebraska Prestressed claims was inapplicable to the case and confusing and inconsistent with another instruction that was submitted. Instruction No. 3 is Shell-Con's verdict directing instruction and follows MAI No. 26.05, modifying it only to the extent that it was made to apply to the facts of this case:

"Your verdict must be for Plaintiff if you believe:

First, Plaintiff furnished labor, equipment and materials incidental to the erection of precast concrete to Defendants, and

Second, Defendants accepted such labor, equipment and materials unless you believe that Plaintiff is not entitled to recover by reason of Instruction No. 4."

Nebraska Prestressed contends that this instruction places in issue the question of liability which it claims has been conceded. In addition, Nebraska Prestressed argues that Instruction No. 3 is in conflict with Instruction No. 5 which requires that the jury award at least $15,086.02 to Shell-Con. Since the jury must return a verdict in favor of Shell-Con under Instruction No. 5, Nebraska Prestressed argues that Instruction No. 3 is inapplicable because it injects the question of liability when another instruction has removed the liability issue from the jury's consideration. Nebraska Prestressed argues that these two instructions confused and misled the jury as evidenced by the excessive verdict rendered by the jury.

■■■ Shell-Con responds to Nebraska Prestressed's argument by asserting three reasons why the giving of Instruction No. 3 was not error. First, Shell-Con asserts that

1. The court in Bradley found the omission of such instruction to be harmless error in that case.

liability was not conceded by Nebraska Prestressed. In paragraph 15 of its answer to Shell-Con's petition, Nebraska Prestressed denied liability:

"[d]efendant specifically denies that $100,000.00 or any other sum whatsoever is owing from defendant Nebraska Prestressed Concrete Co. to relator, and specifically denies that defendant Nebraska Prestressed Concrete Co., has breached its contract with relator and specifically denies that relator has suffered any damage by reason of any act of defendant."

Second, Shell-Con points to the fact that on two separate occasions, after Nebraska Prestressed's evidence, and during closing arguments, it moved for a directed verdict solely on the question of liability, and both motions were denied. Both motions were submitted after Nebraska Prestressed had conceded that it was liable to some extent to the plaintiff. Although Nebraska Prestressed had conceded liability during the trial, Shell-Con claims it was entitled to Instruction No. 3, since the trial court refused to direct a verdict on the question of liability. Third, Shell-Con correctly asserts that even if Instruction No. 3 is prejudicial, its prejudice is against Shell-Con. If the giving of Instruction No. 3 was error, the error would favor Nebraska Prestressed since Shell-Con was given a greater burden then required by law. It is well-established that "one may not complain of an instruction placing too great a burden on his adversary." *Tinsley v. Massman Construction Co.*, 270 S.W.2d 835 (Mo.1954); *Hough v. Jay-Dee Realty & Investment, Inc.*, 401 S.W.2d 545 (Mo.App.1966); *Tabor v. Hahs*, 398 S.W.2d 7, 11 (Mo.App.1965). See also cases digested in 3B Mo.Dig., Appeal and Error, ▮▮▮ Thus, even if there were error in submitting Instruction No. 3, the error did not prejudice Nebraska Prestressed.

▮ Nebraska Prestressed also alleges that the trial court erred in failing to give several instructions that it proposed. Nebraska Prestressed offered its Instruction B claiming that it correctly sets out the ultimate jury issue involved in the litigation. The instruction is a combination of four MAI instructions pieced together to apply to the circumstances of this case. The instruction directs a verdict for Shell-Con and sets out damages, limiting Shell-Con to the proportion of the contract price that is attributable to the work and labor furnished. The instruction also requires the jury to deduct from this figure, payments made and any damages sustained by Nebraska Prestressed. This is the measure of damages used when the contractor voluntarily walks off the job and the owner, or the person standing in his place, has not prevented completion of the work. See *Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co.*, supra. Although Nebraska Prestressed is entitled to have its theory of the case submitted to the jury (this was done in Instruction No. 4 in the form of an affirmative defense), Instruction B does not set out the ultimate jury issue. Shell-Con has made a submissable case, as noted above, that Nebraska Prestressed breached the contract, and Shell-Con is therefore entitled to an instruction on measure of damages when the owner, or person standing in his place, has breached the contract. The trial court properly refused to give Instruction B. The court also did not give Instruction E which was supplemental to Instruction B. Instruction E deals with Shell-Con's damages arising from the extra work it performed for Nebraska Prestressed. Since the extra work and materials furnished would be considered by the jury under both Instructions 3 and 5, Instruction E would result in unnecessary duplication and was therefore properly refused.

▮ Nebraska Prestressed claims that the court erred in refusing to give its Instruction A which attempts to place before the jury the roles defendant Alfred Lindgren, Inc., and Pennsylvania Insurance Co. have in the litigation. The proposed instruction reads as follows:

"Under the law, defendants Alfred Lindgren, Inc. and the Pennsylvania Insurance Company are liable to Relator, Shell-Con, Inc., only in their capacities as Principal and Surety on the Construction Contract Performance Bond, and you may only assess such damages against these defendants in the same amount and to the same extent that you award damages against defendant, Nebraska Prestressed Concrete Co., for monies owing to Realtor, Shell-Con, Inc., for the value of the tools, equipment, material and labor furnished in the construction of the multi-purpose complex at the University of Missouri."

In place of Instruction A, the trial court did submit to the jury Instruction No. 7:

"Under the law, the defendant, Alfred Lindgren, Inc., as Principal on the Construction Contract Performance Bond and the Pennsylvania Insurance Co., as Surety on said Bond are liable to plaintiffs to the same extent and in the same amount that Nebraska Prestressed Concrete Company is liable to plaintiff."

We believe that these two instructions are substantively the same and both properly define the roles of these two defendants. The proposed instruction differs only in emphasis and in including the measure of damages, both of which are unnecessary in this instruction. Instruction No. 7 is as understandable as Instruction A, and we do not find error here merely because the defendant believes its proposed instruction is preferable.

Another allegation of error raised by Nebraska Prestressed deals with the trial court's refusal to answer a question sent by the jury after it began its deliberations. The jury sent the judge the following note: "The jury would like to see the actually [sic] figures paid Shell-Con, Inc. to date, plus extra due him and paid him." After discussing the request with counsel of both parties, the trial court sent back to the jury

the following additional instruction: "The jury is to base decision [sic] on the evidence the jury has heard and remember it to be." The defendant claims that the trial court should have instructed the jury as to the exact amount Nebraska Prestressed had paid Shell-Con, since that figure was conceded by the plaintiff. By refusing to so instruct, the defendant contends that the jury was left to speculate on a matter that was not at issue. Inasmuch as this case is to be remanded and it is unlikely that this issue will reoccur in the new trial, there is no need to delve into its merits.

We have indicated that there was sufficient evidence from which the jury could find that Nebraska Prestressed—not Shell-Con—had breached the contract between the parties. We are also convinced that there is no need to retry this case on the question of liability. We therefore affirm that portion of the judgment relating to the liability and finding that Nebraska Prestressed is liable to Shell-Con for damages in quantum meruit by reason of Nebraska Prestressed's breach of contract.

A final point raised by Nebraska Prestressed concerns Shell-Con's damage Instruction No. 5 which, in relevant part provides:

"If you find the issues in favor of the Plaintiff, you must award Plaintiff the reasonable value of labor, equipment, and materials incidental to the erection of precast concrete.

However, if you find for Defendants under Instruction No. 4 (defendant's affirmative defense instruction) then your award *must take into consideration damages*, if any, as have resulted to Defendants." (emphasis added).

Nebraska Prestressed challenges this instruction on two grounds. First, it claims that the jury should have been instructed that it *must deduct* damages, if any, resulting to the defendant. Nebraska Prestressed contends that the wording of In-

struction No. 5 is inconsistent with the wording of Instruction No. 6, Nebraska Prestressed's damage instruction, if the jury finds in its favor on its affirmative defense. Instruction No. 6 requires that the jury:

"Must deduct from this amount (the value of plaintiff's work and labor) not only the amount of all payments made by defendant, Nebraska Prestressed Concrete Company, to plaintiff, Shell-Con, Inc., but also such sum as you believe was the difference between the reasonable cost to defendant, Nebraska Prestressed Concrete Company, of performing the work which plaintiff, Shell-Con, Inc., failed to perform and that proportion of the contract price attributable to the work which plaintiff, Shell-Con, Inc., failed to perform."

Nebraska Prestressed claims that the "take into consideration" language of Instruction No. 5 is inconsistent with "must deduct" language of Instruction No. 6. "Instructions should not be so worded as to be conflicting." *Payton v. Bi-State Development Agency*, 417 S.W.2d 522, 527 (Mo.App. 1967). See also 27A Mo.Dig., Trial, ⊸243 for digest of cases holding it is error to submit inconsistent or conflicting instructions. We find that the language in Instruction No. 5 does conflict and is inconsistent with the language in Instruction No. 6. Under Instruction No. 6, the jury, if finding for Nebraska Prestressed on its affirmative defense, is required to deduct defendant's damages from the damages it finds that Shell-Con has sustained. Under the language of Instruction No. 5, the jury is only required to take into consideration the very same damages resulting to Nebraska Prestressed.

Nebraska Prestressed's second objection to Instruction No. 5 is that it fails to require that the jury deduct, from whatever damages it finds were suffered by Shell-Con, the actual payments Nebraska Prestressed made to Shell-Con. Shell-Con conceded receiving a total of $75,273.03 in payments for work done under the contract and for extras. Therefore, whatever value the jury placed on the work done by Shell-Con, Nebraska Prestressed was entitled to have the amount it had already paid Shell-Con deducted from this figure. Nebraska Prestressed claims that since there is no MAI instruction that would be applicable to this situation, the trial court should have submitted a modification of MAI No. 7.01. MAI No. 7.01, applicable when there is an admitted settlement with a joint tort-feasor, instructs the jury that "[a]fter you have determined such sum, (plaintiff's damages), you must deduct _____ dollars which (name of joint tort-feasor) has paid plaintiff." Shell-Con claims that the problem is resolved by the inclusion in Instruction No. 6 of the requirement that the jury deduct payments made by Nebraska Prestressed. Instruction No. 6 does not completely cure the deficiencies of Instruction No. 5. Instruction No. 6 is predicated upon the jury's finding in favor of Nebraska Prestressed on its affirmative defense. The two instructions read together seem to direct the jury to deduct payments made by Nebraska Prestressed only if the jury finds in favor of Nebraska Prestressed on its affirmative defense and not to deduct such payments if the jury finds in favor of Shell-Con's theory of the case. We believe that this is misleading and that Nebraska Prestressed was entitled to have added to Instruction No. 5 a provision requiring the jury to deduct the amount of payments Nebraska Prestressed made to Shell-Con whether or not the jury found in favor of Nebraska Prestressed's affirmative defense.

However, the error in these instructions lies only on the questions of damages and whether the jury chose to accept Nebraska Prestressed's affirmative defense that Shell-Con had breached the contract. Since we are remanding the cause on the issue of damages, and since the jury rejected Nebraska Prestressed's affirmative defense, the error of Instruction Nos. 5 and 6 can be

cured, provided that on retrial on the issue of damages Nebraska Prestressed is given opportunity to have the jury instructed to deduct payments made to Shell-Con from the damages the jury finds Shell-Con has sustained.

The judgment finding in favor of Shell-Con on the issue of liability is affirmed and the cause remanded for retrial on the issue of damages only.

SIMEONE, P. J., and McMILLIAN, J., concur.