FRANCIS R. HUGHES, d.b.a. KUSTOM BUILDERS,
v. JAMES L. MONNAHAN AND OTHERS.

165 N. W. (2d) 231.

February 14, 1969—No. 41173.

*James W. Brehl, Louis W. Brenner,* and *Maun, Hazel, Green, Hayes, Simon & Aretz,* for appellant.

*Kueppers, Strong, Kueppers & Von Feldt* and *Fred A. Kueppers, Jr.,* for respondent Monnahan.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

OTIS, JUSTICE.

Plaintiff seeks to recover damages and to impose a mechanics lien for $3,970 for work and materials furnished in remodeling a house being purchased by defendant Monnahan under a contract for deed and occupied by defendants Mangan. The trial court sitting without a jury awarded judgment against the Mangans but refused to impose a mechanics lien on the interest of Monnahan. Plaintiff appeals from an order denying his motion for amended findings or a new trial. The only issue is

whether an owner who has no knowledge of a contract for improvements until the work is completed is liable for the reasonable value of such improvements. We hold that he is not.

In 1944, the Mangans took possession of the premises at 1919 Jefferson Street in the city of St. Paul and continued to occupy them as their home during the times here pertinent. In 1947, they obtained title. Subsequently they executed a mortgage which was foreclosed in 1959 and sold to one Esther Johnson. Before the expiration of the time to redeem, defendant Monnahan purchased the property on a contract for deed from Mrs. Johnson. The Mangans were permitted to remain in possession with the understanding they were to pay to Monnahan $100 a month. Only five of such payments were made. Because Mrs. Mangan and Mrs. Monnahan were sisters, no action was taken either to recover what was due Monnahan or to evict the Mangans. A leak in the plumbing prompted the Mangans to contract with plaintiff in September 1964 to make necessary repairs and in the process to remodel the bathroom and kitchen. The cost of repairs was only $152.25. The remainder of the work was in remodeling which was completed in December 1964.

It appears without dispute that a year or two earlier the Monnahans were vaguely aware of the necessity for repairing the plumbing but never authorized any work to be done and had no knowledge of the repairs or remodeling until February 1965, when plaintiff sought to secure payment from them because the Mangans were apparently insolvent.

The trial court found that the Mangans were tenants at sufferance and that the Monnahans neither knew of nor consented to the work done by plaintiff and accordingly entered judgment against the Mangans and in favor of defendant Monnahan.

Plaintiff seeks to impose a lien and liability against the Monnahans on four theories:

First, that the owner is presumed to have authorized improvements under the language of Minn. St. 514.06. However, that issue was decided adversely to plaintiff in Anderson v. Harrison, 281 Minn. 95, 160 N. W. (2d) 560.

Second, that the Mangans were agents of Monnahan with implied authority to undertake the contract on behalf of the owner. There is no evi-

dence of any such relationship, and we find no merit in this contention.

Third, plaintiff asserts that defendant Monnahan has an equitable mortgage which is unrecorded and hence the plaintiff's lien attached to an equitable fee interest of the Mangans. Whether on the facts thus assumed by plaintiff he would be entitled to recover, we need not decide. The only evidence of an equitable mortgage was the wholly inconclusive testimony of Mrs. Mangan to the effect that in 1960 the Mangans agreed to pay Monnahan $100 a month on the following basis:

"It was like rent—he would take our payments—we would make it up to him whatever he put out, with the understanding that if we had the money we could pay him and get the house back on a running basis.

\* \* \* \* \*

"If we had the money, enough so we could pay Mr. Monnahan, we would pay him back all that he had paid, and we would have the house as ours again."

Monnahan categorically denied any such arrangement. The Mangans made only five monthly payments in some 4 years. The court's finding that they were tenants at sufferance and not equitable owners is amply supported by the record.

The only remaining question is whether or not plaintiff is entitled to assert his lien against Monnahan on a theory of quasi-contract or unjust enrichment. Plaintiff cites as authority Karon v. Kellogg, 195 Minn. 134, 261 N. W. 861. There, the court held the owner of a farm liable for repairs in the sum of $160 contracted by the defendant's brother who was in possession of the property. The court refused to find an agency by estoppel since the owner did not hold the tenant out as his agent. The court held that the case was one for necessary or reasonable repairs and "the value of labor and material being fixed, it may be inferred, in this case, without further evidence that the benefit that defendant received was not less than such value. Having been so benefited, defendant is liable, *quasi ex contractu*, independently of contract or agency. Otherwise he would be unjustly enriched at the expense of plaintiffs." 195 Minn. 136, 261 N. W. 862. While the court's decision in Karon is based on doubtful authority and has been criticized for that reason (34 Mich. L.

Rev. 577), at most it authorizes recovery against the owner only for "necessary or at least reasonable repairs," which in this case amounted to $152.25 and were not segregated from the claim for remodeling. Nor can it be said that the work was ratified where the benefits could not be returned. The Karon case was distinguished in Mehl v. Norton, 201 Minn. 203, 207, 275 N. W. 843, 845, 113 A. L. R. 1055, where we noted that in Karon we had held that a claim quasi ex contractu cannot be predicated on "voluntary interference." [1]

An analogous rule is that found in Restatement, Restitution, § 41, which provides:

"A person who has rendered services to another or services which have inured to the other's benefit, is not entitled to compensation therefor if the services were rendered:

"(a) without the other's knowledge or reason to know of them, solely because of a mistaken belief

\* \* \* \* \*

"(iii) \* \* \* that by performance he would acquire an interest in the thing benefited by the service \* \* \*."

*Comment a* notes that the rule "is harsh to a person who performs the service, [but] results from the fact that many times it would be still more harsh to require a recipient to pay for services which he did not want or for which he could not afford to pay although he may have been glad to have them."

We have concluded that there is no support for plaintiff's claim against Monnahan either in law or in equity. Plaintiff makes no claim that in doing the work he looked to the Monnahans for payment. Plaintiff was in a position to determine who owned the property and whether or not the contracting party was financially responsible. This litigation arises because of the insolvency of the Mangans and because of plaintiff's failure to investigate their financial status. Plaintiff neither

---

[1] The Karon case and other authorities discussing unjust enrichment are also cited in Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 231, 94 N. W. (2d) 527, 532. See, also, Paschall's, Inc. v. Dozier, 219 Tenn. 45, 56, 407 S. W. (2d) 150, 155.

checked the records to find out who owned the property nor inquired of the Mangans whether they had any interest in it. Because the Mangans had lived there 20 years, plaintiff "presumed that the Mangans owned the home." While it is unfortunate that plaintiff is denied recovery against a solvent defendant for work and material which was of benefit to the property, Monnahan had a right to avoid the imposition of an obligation about which he had no knowledge and no opportunity to make a decision. Therefore, if the loss is to fall on one of two innocent persons, equity dictates that it remain with him who was in the better position to have prevented it.

Affirmed.