ROLLA LUMBER COMPANY, a corpora-
tion, Plaintiff-Appellant,

v.

Everett C. EVANS and Barbara J. Evans,
Defendants-Respondents.

No. 9106.

Missouri Court of Appeals,
Springfield District.

June 20, 1972.

Routh & Turley, B. B. Turley, Rolla, for plaintiff-appellant.

William W. Hoertel, Rolla, for defendants-respondents.

STONE, Judge.

This is a court-tried action in quantum meruit by plaintiff Rolla Lumber Compa-

ny, a corporation, to recover from defendants Everett C. Evans and Barbara J. Evans, husband and wife, by reason of certain materials sold and billed to one Robert Gardner, defendants' tenant, and allegedly "affixed . . . to defendants' premises" by Gardner, "thereby increasing the value of defendants' premises in an amount approximately equal to $1,500." From the judgment for defendants, plaintiff appeals.

Defendants owned and resided in an old remodeled schoolhouse on a country road some 3½ to 4 miles southeast of Rolla. They also owned on the opposite side of the road a tract of undisclosed size on which there were a house and two outbuildings rented to and occupied by Robert Gardner. During the period from January 10 to February 14, 1969 plaintiff sold and billed to Gardner numerous and sundry items of material for which charges were recorded on the 32 tickets or invoices offered in evidence by plaintiff. The aggregate amount of the charges on those tickets is not stated in the transcript, but witness McConnell, the manager of and a stockholder in plaintiff corporation, opined that "the material" ran *"around fifteen hundred dollars and some odd cents."* (All emphasis herein is ours.) It was averred in plaintiff's petition that "the materials furnished by plaintiff [were] in the total amount of *$1,564.49"*; but a prayer for a judgment against defendants in that sum was, by leave of court on the day of trial, amended to *$1,483.46*. In their statement of the case here, plaintiff's counsel inform us that "the *invoice price* of goods and materials delivered to the defendants' premises was *$1,433.46."* However, the charges on the 32 tickets or invoices in evidence as plaintiff's exhibit 1 aggregate *$1,540.80*. Setting aside this salmagundi of numerical proffers, we note more significantly (a) that there was no averment in the petition and no evidence upon trial that plaintiff's charges (whatever they may have been) were fair and reasonable, and (b) that all of the tickets or invoices in evidence show that the materials itemized thereon were

"sold to" Gardner, that most of those tickets bear his signature acknowledging receipt of the materials listed thereon, and that neither the name nor the signature of either defendant appears on any ticket.

Most of the materials sold by plaintiff to Gardner—as much as ninety per cent thereof, so plaintiff's manager thought—were delivered by plaintiff to the premises rented by Gardner. Being steadily employed elsewhere from 8 A.M. to 5 P.M. during the regular work week, defendant Everett did not witness the delivery of any of those materials. However, when he noticed materials on the rented premises and observed that some repairs and improvements were being made, he talked with tenant Gardner, who stated that "he [Gardner] was going to pay for it." Plaintiff's manager McConnell frankly conceded that he was looking to Gardner for payment and that he had not seen or talked with either defendant and did not know who owned the rented premises until "sometime," perhaps as long as two months, after the last materials had been delivered "when we begin to wonder why" Gardner had not paid for them. Thus motivated by Gardner's failure to pay, plaintiff's manager talked with defendant Everett for the first time and then learned that he and his wife owned the rented premises. On some later date not fixed in the record, plaintiff's manager and David Hall, the home office credit manager for the chain of lumber yards of which plaintiff was one link, went to Gardner's home and conversed with him, then walked across the road and talked to defendant Everett in his yard, and in the course of that conversation informed him (so Hall testified) that "Mr. Gardner had not yet paid us . . . and if Mr. Gardner didn't pay we would possibly look to [him]." Neither plaintiff's manager McConnell nor home office credit manager Hall ever saw or communicated with defendant Barbara.

The statement of plaintiff's counsel in the "Argument" section of their brief that *"some* of the material [sold by plaintiff to

Gardner] was added to the [rented] premises" fairly reflects the state of the record on this subject. Admittedly and for obvious reasons, no witness upon trial was able to say that *all* such materials either were incorporated in, or were utilized in improving, the rented premises, and no one undertook to itemize or list the materials so incorporated or utilized. The person best situated to illuminate this subject, namely, tenant Gardner, had vacated the rented premises on a date not disclosed in the transcript. His father-in-law, plaintiff's witness Elbert L. Reed, who as a truck driver for plaintiff had delivered much of the materials to the rented premises, stated that at the time of trial Gardner was at Gray Summit, Missouri, but his testimony was not offered in person or by deposition. We observe parenthetically that defendant Everett said he had seen three new unopened gallon buckets of paint removed from the rented premises in Reed's automobile—a matter here recognized in plaintiff's statement of the case by the concession that "the invoice price" of the materials sold to Gardner may be reduced by "the value of three buckets of paint that may not have been applied to the [rented] premises."

■ As recorded in the findings and judgment of the trial court and confirmed in plaintiff's brief on appeal, recovery herein is sought on quantum meruit. "Quantum meruit means 'as much as he has deserved,' and the burden is on the claimant to plead, prove, and [where trial by jury has not been waived] have the jury instructed, that his charges are fair and reasonable." Rodgers v. Levy, Mo. App., 199 S.W.2d 79, 82(5); Adams v. Smith, Mo.App., 307 S.W.2d 525, 527(1); Williams v. Cass, Mo.App., 372 S.W.2d 156, 161(10, 11); Woodley v. Esslinger, Mo.App., 458 S.W.2d 869, 873. See Otte v. McAuliffe, Mo.App., 441 S.W.2d 733, 736(2). Hence, failure to prove the reasonable value of services rendered or materials furnished is fatal to recovery therefor

in quantum meruit. Bybee v. Dixon, Mo. App., 380 S.W.2d 539, 543(12); Williams v. Cass, supra, 372 S.W.2d at 161; Knoch v. Frye, Mo.App., 363 S.W.2d 737, 741(5); Hutchinson v. Swope, Mo.App., 256 S.W. 134, 135(4). See Service Construction Co. v. Nichols, Mo.App., 378 S.W.2d 283, 289(9).

■ In the case at bar, plaintiff's petition (as amended on the day of trial) averred that "materials [were] furnished by plaintiffs in the total amount of $1,438.46" and the tickets or invoices received in evidence upon trial, which listed amounts aggregating $1,540.80, purported to reflect plaintiff's charges for those materials. But, passing the discrepancy between those pleaded and evidentiary figures, the indisputable fact remains there was not a scintilla of evidence that any of those charges were fair and reasonable. In these circumstances, the above-stated principles and supporting authorities dictated the judgment nisi for defendants.

■ In reaching this conclusion, we have not overlooked the novel and ingenious argument of plaintiff's counsel, wholly unsupported by cited authority, that the fair and reasonable value of the materials sold and billed to Gardner should be "that value or amount by which the defendants' property has been increased because of the application of the material." Even if that theory be recognized *arguendo*, brief reference to the transcript before us will serve to indicate that the same result would be impelled. Over the timely and repeated objections of defendants' counsel, plaintiff's manager McConnell was examined in this wise: "Q. Now, what is your judgment as to the increased value of the property of the defendants by the application of the materials which you testified were put on there? . . . A. Well, your value is going to be *approximately somewhere around twice the value of your material* . . . . Labor, otherwise, will practically always run as much as the ma-

terial on—going on a job . . . . *[Y]ou put a hundred dollars of material into a building, usually you'll have a hundred dollar increase* if you just disregard the labor. Q. What would be your judgment is the increased value of the defendants' property because of the application of your material only? . . . A. Well, I would say it would be *approximately the same amount of dollars as the material* . . . . Around fifteen hundred dollars and some odd cents." Since a showing as to plaintiff's *charges* sans evidence that they were fair and reasonable would not support a judgment for plaintiff in quantum meruit, *a fortiori* approximations and generalizations as to "increased value of defendants' property" roughly equated with, and wholly depending upon, a naked showing as to plaintiff's *charges* would not support such judgment.

■ For an even more fundamental reason not reached in the briefs, plaintiff was not entitled to recover on the evidence presented. Quantum meruit is one of the common counts in general assumpsit [1 Am.Jur.2d Actions § 13, p. 553; 73 C.J.S. Quantum, p. 1269; 7 C.J.S. Assumpsit, Action Of § 2, p. 109], the remedy for the enforcement of quasi-contractual obligations [Laughlin v. Boatmen's Nat. Bank of St Louis, 354 Mo. 467, 476, 189 S.W.2d 974, 979(13, 14)], i. e., "legal obligations arising, without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." Woodward, The Law of Quasi Contracts § 3, p. 4. See 17 C.J.S. Contracts § 6, p. 566.

■ "The term 'quasi contracts' may with propriety be applied to all noncontractual obligations which are treated, for the purpose of affording a remedy, as if they were contracts"; and, when so interpreted, the term includes "(1) judgments and other so-called contracts of record; (2) a number of official and statutory obligations . . ., and (3) obligations arising from 'unjust enrichment,' i. e., the receipt by one person from another of a benefit the retention of which is unjust." Woodward, op. cit. supra § 1, pp. 1–2. See Donovan v. Kansas City, 352 Mo. (banc) 430, 448, 175 S.W.2d 874, 884(17), modified 352 Mo. 430, 179 S.W.2d 108, appeal dismissed 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551. However, for the sake of convenience, the term "quasi contracts" ordinarily should be applied to obligations of the third class alone [Woodward, op. cit. supra § 1, l.c. 2], and instant plaintiff here seeks to recover on an alleged obligation in that category.

■ Emphasizing that "[i]t is of the essence of quasi-contractual obligation that the retention of the benefit received by the defendant would be unjust," benefits of that character were identified and classified by Professor Woodward as those conferred (a) "in misreliance[1] on a right or duty," or (b) "through a dutiful intervention in another's affairs," or (c) "under constraint." Woodward, op. cit. supra § 9, pp. 9–10. Granting that a substantial portion of the materials sold and billed to Gardner was incorporated in, or was utilized in improving, the rented premises, and that as a result thereof defendants were benefited to some extent (although the measure thereof is not clearly shown or fairly ascertainable from the record), it does not follow that they thereby became burdened with a quasi-contractual obligation to pay plaintiffs therefor, since the transcript before us forecloses any finding that such benefit was conferred by plaintiff upon defendants in misreliance on any

---

1. "The term 'misreliance,' coined by Professor Wigmore, is used for the sake of convenient brevity to denote a reliance which results from a mistake of fact, i. e., an erroneous belief that a certain fact exists or will exist." Woodward, op. cit. supra, § 10, pp. 11–12.

right or duty, or through dutiful intervention in defendants' affairs, or under constraint.

Other authority points out that "[a] valid claim for unjust enrichment can be based only on an element of misconduct or fault or undue advantage taken by one party of another . . . ." 17 C.J.S. Contracts § 6, l.c. 573. See Brown v. Thornton, 150 Mont. 150, 432 P.2d 386, 390(7). Furthermore, for a promise to pay to be implied, "the person benefited must do something from which his promise to pay may be fairly inferred . . . must be in a situation in which he is entirely free to elect whether he will accept the work, and the election must influence the conduct of the [other] party with reference to the work." 17 Am.Jur.2d Contracts § 4, l.c. 338–339. Thus, high authority long ago declared that even when "a structure is permanently affixed to real property belonging to an individual, without his consent or request, he cannot be held responsible because of its subsequent use. It becomes his by being annexed to the soil; and he is not obliged to remove it to escape liability. He is not deemed to have accepted it so as to incur an obligation to pay for it, merely because he has not chosen to tear it down, but has seen fit to use it." United States v. Pacific R. Co., 120 U.S. 227, 240, 7 S.Ct. 490, 496, 30 L. Ed. 634, 638; Sutton v. United States, 256 U.S. 575, 580, 41 S.Ct. 563, 565(4), 65 L. Ed. 1099, 1102–1103(7). To the same effect, see particularly Chatfield v. Fish, 126 Conn. 712, 10 A.2d 754; Hughes v. Monnahan, 282 Minn. 407, 165 N.W.2d 231, 233–234(4); Snider v. Dunn, 11 Mich.App. 39, 160 N.W.2d 619(3); 98 C.J.S. Work & Labor § 7, p. 723; id. § 42, p. 779.

The judgment for defendants should be and is affirmed.

TITUS, C. J., and HOGAN, J., concur.