**JB CONTRACTING, INC. and Gerald A. Beller, Plaintiffs–Respondents,**

v.

**Bernie B. BIERMAN and Mansions of the Hills I, L.L.C., Defendants–Appellants.**

No. 25441.

Missouri Court of Appeals, Southern District, Division One.

Sept. 10, 2004.

Motion for Rehearing or Transfer Denied Oct. 1, 2004.

Application for Transfer Denied Nov. 23, 2004.

John E. Price, Carnahan, Evans, Cantwell & Brown, Springfield, for Appellants.

Michael L. McDorman, McDorman & Hayden, L.L.C., Versailles, for Respondents.

PHILLIP R. GARRISON, Judge.

Bernie B. Bierman ("Bierman") and Mansions of the Hills I, L.L.C. ("Mansions") (collectively referred to as "Appellants") appeal from a judgment entered following a jury verdict awarding $2,000,000 in damages for unjust enrichment to JB Contracting, Inc. ("JB Contracting") and Gerald A. Beller ("Beller") (collectively referred to as "Respondents").

Beller is a resident of Omaha, Nebraska and the owner of JB Contracting, a Nebraska corporation specializing in commercial construction, specifically the creation of cold storage facilities. Bierman is a resident of Missouri and the owner of Mansions.

Beller and Bierman first met in August of 1997, and thereafter spoke several times during 1998 and 1999 regarding a plan by Bierman to mine limestone and then construct a cold storage facility on land near Branson, Missouri. Mansions had a commercial lease running from June 18, 1999 until August 18, 2003 to extract limestone from approximately 1,300 acres of land near Branson ("the Scott property") and to construct and operate a cold storage business on that land. At the end of the lease term, Mansions had an option to purchase the property for $7,500,000, plus an amount determined by a complicated formula based on the amount of royalties paid and the original purchase price of the property. Bierman's plan was to mine the limestone from the Scott property, sell some of it locally for use in construction projects, and truck the rest of it to Wichita, Kansas where it would be sold to a concrete and asphalt company. In Wichita, the trucks would then be loaded with sand to be brought back and sold to construction businesses in the Branson area. Bierman anticipated that the venture would be very profitable, with first year profits estimated at $3,000,000 and increasing from there for fourteen years.

Beller and Bierman reached an agreement that Beller would provide his business judgment and his credit in order to obtain financing while Bierman would provide equipment as collateral for loans. Accordingly, Compton Pierson JB, L.L.C. ("Compton Pierson JB") was formed, consisting of Beller and Compton Pierson Development, L.L.C. ("Compton Pierson Development") (formerly Mansion On The Hill, L.L.C.), a limited liability company owned by Bierman, as the two equal members. The credit obtained by Beller was to be used to purchase "all equipment reasonable and necessary to engage in the business of the company and to obtain any

leases or mining rights necessary and reasonable thereto." Beller would then be repaid when the company became profitable.

Beller procured financing for the company by taking out loans and entering into several agreements. Put together, Beller and JB Contracting guaranteed about $1,500,000 worth of financing for Compton Pierson JB. This money was obtained so that the initial stage of the work on the Scott property, preparing the property to be mined and constructing "face-ups"[1] and access roads, could be completed. The initial stage of the work on the Scott property was completed in late winter or early spring of 2000.

Additional financing had to be obtained, but before the second stage of the work could begin procuring it became a problem. Before any financing could be arranged, the lenders required that Compton Pierson JB produce a lease showing that it had the right to mine the limestone from the Scott property. As stated before, Mansions had a lease from the property owners, the Thomas H. and Mayme P. Scott Foundation, Inc. ("Scott Foundation"). Mansions and Compton Pierson JB were, however, unable to reach an agreement for assignment of the existing lease. As a consequence, the financing needed to complete the project could not be obtained, the project was halted, and

Beller has been sued on the obligations he personally guaranteed. He testified that he had "a million and a half plus liability hanging out there."

Beller and JB Contracting filed suit against Bierman and Mansions[2] on March 22, 2001, alleging unjust enrichment, fraud,[3] and seeking a declaratory judgment concerning the right to possession and title to certain pieces of equipment.[4] The case was tried to a jury on November 4 and 5, 2002, and resulted in a $2,000,000 verdict for Respondents on the unjust enrichment claim. The jury found against Respondents and in favor of Bierman, though, on the fraud claim. The trial court entered judgment in favor of Respondents and against Appellants in the amount of $2,000,000. Appellants then filed a motion for judgment notwithstanding the verdict and for new trial, argument was heard, and both motions were denied. On this appeal, Appellants claim that the trial court erred in denying their motion for judgment notwithstanding the verdict, and that the evidence was insufficient to support the amount of the judgment.

 "The standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case." *Benoit v. Mo. Highway & Transp. Comm'n.*, 33 S.W.3d 663, 667 (Mo.App. S.D.2000) (quot-

---

1. A "face-up" is basically cutting off the side of a hill to make a flat surface so that the rock to be mined is more accessible. One "face-up" had been completed before Mr. Beller was brought in, and more were completed afterwards.

2. There is no issue raised in this appeal concerning the viability of any claim alleged by JB Contracting.

3. The failure to assign the lease to Compton Pierson JB was the basis for Respondents' claim of fraud against Bierman (Respondents voluntarily dismissed the fraud claim as to

Mansions). Respondents claimed that Appellants falsely represented that they would transfer the commercial lease to Compton Pierson JB. However, the jury returned a verdict against the Respondents on the fraud claim, the trial court entered judgment in favor of Bierman on that claim, and Respondents raise no issue in this appeal about that portion of the judgment.

4. Respondents voluntarily dismissed the claims for a declaratory judgment prior to trial.

ing *Brown v. Hamilton Ins. Co.*, 956 S.W.2d 417, 419 (Mo.App. E.D.1997)). The plaintiff must offer substantial evidence in support of each element of the cause of action in order to make a submissible case. *Id.* "[W]e must view the evidence in the light most favorable to the party who obtained the verdict." *Id.* That party is entitled to all reasonable favorable inferences from the evidence, and we must disregard the other party's evidence except as it may aid the winning party's case. *Id.* The jury judges the credibility of the witnesses and it may choose whether to believe or disbelieve any part of their testimony. *Id.* "[W]here reasonable minds can differ on factual questions, this Court does not disturb the jury's verdict." *Cotner Productions, Inc. v. Snadon*, 990 S.W.2d 92, 98 (Mo.App. S.D.1999).

The Appellants raise two points on appeal. In their first point, Appellants claim that Respondents failed to introduce sufficient evidence at trial to support their claim of quantum meruit. Particularly, Appellants assert that Respondents failed to produce sufficient evidence to show that Respondents provided any service or benefit to Appellants, that Appellants accepted any service provided by Respondents, that Appellants benefited from any service provided by Respondents, and that Appellants were unjustly enriched from any service provided by the Respondents in that Respondents' services were "provided to and for the benefit of [Compton Pierson JB] and not [Appellants], and benefited land owned by the Scott Foundation, not [Appellants]." The Appellants state that the evidence introduced by Respondents at trial does not show that any of the loans or guarantees made by Beller benefited Appellants, but only benefited Compton Pierson JB, a non-party to the suit that was owned equally by Beller and Compton Pierson Development. The Appellants also claim that there is no evidence that

Bierman or Mansions accepted any services provided by Respondents. Appellants state that Beller's testimony shows that all of the money went into Compton Pierson JB, not to Appellants. Furthermore, Appellants claim that there was no evidence to show that Appellants were unjustly enriched due to the credit and financing provided by Respondents. Neither of the Appellants owns the Scott property, and the lease was to expire approximately nine months after trial. Though Mansions had an option to purchase the Scott property, Appellants contend that the evidence shows that it did not have the funds to exercise it.

Respondents counter by claiming that sufficient evidence was produced to show that the Appellants were unjustly enriched. Respondents contend that the credit and financing procured by Respondents was used to make improvements to the Scott property, including clearing trees and creating "face-ups" and parking areas. According to Respondents, these improvements increased the value of the leasehold estate held by Mansions. Respondents argue that Appellants accepted and retained the benefits because Appellants approached Respondents to become partners and when the improvements were completed, Appellants refused to transfer the lease to Compton Pierson JB, and instead retained the lease and an option to purchase the Scott property. This is also the basis for Respondents' claim that the retention of the benefits was unjust.

■■■ "Quantum meruit is a remedy to enforce quasi-contractual obligations and is generally justified on the theory of unjust enrichment." *Cotner*, 990 S.W.2d at 98. "An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable val-

ue, would be unjust." *S & J, Inc. v. McLoud & Co., L.L.C.,* 108 S.W.3d 765, 768 (Mo.App. S.D.2003). The elements of an action for unjust enrichment are: (1) one party conferred a benefit on another; (2) the receiving party acknowledged or recognized that a benefit was conferred; and (3) the receiving party accepted and retained the benefit. *American Standard Ins. Co. of Wis. v. Bracht,* 103 S.W.3d 281, 291 (Mo.App. S.D.2003). The most important requirement is that the enrichment be "unjust." *Id.; S & J, Inc.,* 108 S.W.3d at 768. However, "[m]ere receipt of benefits is not enough to prevail in a claim of unjust enrichment when there is no showing that it would be unjust for a party to retain the benefit received." *American Standard Ins. Co. of Wis.,* 103 S.W.3d at 292.

██ Respondents sued Bierman in his individual capacity, as well as Mansions, which was owned solely by Bierman. Judgment was entered against both Bierman and Mansions. However, Respondents failed to allege and prove facts necessary to hold Bierman individually liable for the acts of the limited liability company owned by him. Respondents produced facts, which, according to them, show that Mansions's leasehold interest was benefited by the actions of Respondents. However, they fail to show how Bierman was benefited individually, and not as a member of a limited liability company.

Section 347.057, RSMo (2000) states

> A person who is a member, manager, or both, of a limited liability company is not liable, solely by reason of being a member or manager, or both, under a judgment ... of a court ... for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise[.]

Accordingly, the judgment against Bierman for the alleged unjust enrichment that Mansions received must be reversed.

██ Additionally, Respondents did not produce substantial evidence to show that any benefit was conferred upon Mansions. The evidence Respondents produced at trial shows that the credit and financing was used to make improvements to the Scott property. But, the evidence showed that the property has not been mined following the failure of the business venture. In fact, it showed that the condition of the property had not changed in any substantial manner between the spring of 2000 and trial in early November of 2002. Respondents did not produce evidence showing that Mansions was actually able to realize any benefit from this financing. The improvements to the Scott property cannot be a benefit to Mansions because the improvements did not add any value which Mansions was able to realize. *See Vereen v. Clayborne,* 623 A.2d 1190, 1194 (D.C.1993) (finding that party who received a letter from an engineer/architect to aid her in the purchase of property who did not use the letter did not realize any benefit from it and was thus not unjustly enriched); *see also Zaleski v. Congregation of Sacred Hearts of Jesus & Mary,* 256 A.2d 424, 427 (D.C.1969) (finding that trial judge could properly conclude that no benefit was in fact realized from installation of extra snow guards on building). The evidence produced shows that Mansions retained a lease to the Scott property that ran until August 18, 2003, and had an option to purchase the property for a sum exceeding $7,500,000. Furthermore, the evidence shows that Mansions had been unable to obtain the financing necessary to exercise its option, and the lease was to expire approximately nine months after trial. Since Mansions neither mined the property under its lease nor could it purchase the property, there is no evidence that it received a benefit from the improvements. Accordingly, Respondents

did not produce substantial evidence at trial to show that Mansions received any actual benefit from the improvements to the Scott property.

In addition, the Respondents failed to produce evidence to show, if we grant that Mansions was actually benefited by the improvements, that the retention of those benefits would be unjust. The evidence showed that the Scott property has been improved. However, "there is nothing in this doctrine of unjust enrichment that suggests that a party must pay restitution for the creation of a rather slim possibility that the party may receive some benefit in the future." 66 Am.Jur.2d *Restitution and Implied Contracts* § 13 (2001); *see Anderson v. Tuboscope Vetco, Inc.*, 9 P.3d 1013, 1019 (Alaska 2000). The evidence presented at trial showed, at best, that Mansions would be able to purchase the Scott property if it could obtain the financing to do so. However, the evidence showed that it was unlikely that Mansions would be able to find such financing. The only way Mansions could receive some benefit as a result of the improvements would be through purchase, which the evidence showed was very unlikely to occur, or mining of the Scott property, which the evidence showed had not occurred.

Another consideration is the context in which the alleged benefit was conferred. Beller and Compton Pierson Development were equal members of Compton Pierson JB, a business venture whose goal was to make a substantial profit. The improvements were made to the Scott property in order to make it possible to mine the limestone, and, hence, produce the anticipated profits. Missouri cases have not addressed this issue, but other jurisdictions have found that "[r]ecovery for unjust enrichment is unavailable if the benefits to the [defendants] were created incidentally by the [plaintiffs] in pursuit of their own financial ad-

vantage." *Hettinga v. Sybrandy*, 126 Idaho 467, 886 P.2d 772, 776 (1994); *see also Berry & Gould, P.A. v. Berry*, 360 Md. 142, 757 A.2d 108, 116 (2000). Beller and JB Contracting were involved in Compton Pierson JB to make a profit, and the improvements to the Scott property were made in furtherance of that goal. Any alleged benefit conferred upon Mansions was incidental to and a result of Respondents' pursuit of the potential profits to be gained from mining limestone and running a cold storage business. Based on the foregoing, even if some benefit were to have been conferred upon Mansions, it would not be unjust for Mansions to retain that benefit.

We must, therefore, reverse the trial court's denial of Appellants' motion for judgment notwithstanding the verdict because of the lack of a benefit conferred and the fact that even had a benefit been conferred, it would not be unjust for Mansions to retain it.

Appellants' second point challenges the evidence Respondents produced at trial to show the value of the services provided by Respondents. However, as a result of reversing the trial court's denial of Appellants' motion for judgment notwithstanding the verdict for failure to make a submissible case for quantum meruit as a result of unjust enrichment, we do not need to reach Appellants' second point regarding damages.

The judgment is therefore reversed and the case is remanded to the trial court for the entry of a judgment consistent with this opinion.

BARNEY, P.J., and PREWITT, J., concur.