**Richard HOWARD, Appellant,**

v.

**David TURNBULL, Nancy Turnbull and Turnbull Investments, LLC, Respondents.**

**No. WD 70989.**

Missouri Court of Appeals, Western District.

May 4, 2010.

Application for Transfer to Supreme Court Denied June 29, 2010.

Application for Transfer Denied Aug. 31, 2010.

---

James C. Wirken, Kansas City, MO, for Appellant.

Allan E. Coon, Frank W. Lipsman, and Kevin D. Wait, Olathe, KS, for Respondents.

Before Division I: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and CYNTHIA L. MARTIN, Judges.

KAREN KING MITCHELL, Presiding Judge.

Appellant Richard Howard sued Dave Turnbull, Nancy Turnbull, and Turnbull Investments, LLC ("Turnbull Investments") (collectively, "Respondents" or "defendants") for unjust enrichment. On February 20, 2009, the Circuit Court of Jackson County, the Honorable Justine E. Del Muro presiding, held a bench trial on Howard's claim. On March 31, 2009, the circuit court entered judgment for the defendants. We affirm.

## Factual and Procedural Background[1]

This is an unjust enrichment case. Appellant Richard Howard's claim concerns property that he pledged to secure a line

1. In an appeal from a bench-tried case, we review the facts in the light most favorable to the judgment. *Stahlhuth v. SSM Healthcare of St. Louis*, 289 S.W.3d 662, 664 (Mo.App. E.D.2009).

of credit made available to Ganin Homes, LLC ("Ganin Homes"). Ganin Homes was formed in 2002 as a limited liability company whose purpose was real estate development. Ganin Homes was owned by Sabeam LLC and Turnbull Investments. Turnbull Investments, in turn, was owned by Dave Turnbull and Nancy Turnbull. Sabeam LLC was owned by Greg Howard, Richard Howard's brother.

On August 26, 2002, Ganin Homes apparently received a loan of $79,000 from the Bank of Blue Valley ("the Bank"), and the loan was apparently secured by (1) a promissory note, executed by Ganin Homes, for the principal amount of $79,000,[2] and (2) the personal guarantees of Dave Turnbull, Nancy Turnbull, Greg Howard, Greg Howard's trust, and Sabeam LLC.[3] The next day, August 27, 2002, Ganin Homes executed a second promissory note to the Bank, in the principal amount of $200,000, evidencing a line of credit that the Bank extended to Ganin Homes. The August 27, 2002 promissory note was secured by a deed of trust on property owned by Richard Howard and JoAnn Howard ("Howard Deed of Trust"). The Howard Deed of Trust secured future advances against the line of credit to Ganin Homes up to a maximum principal amount of $150,000. The August 27, 2002 promissory note was also secured by a deed of trust on property owned by Dave Turnbull and Nancy Turnbull ("Turnbull Deed of Trust"). The Turnbull Deed of Trust se-cured future advances against the line of credit to Ganin Homes up to a maximum principal amount of $50,000.

Appellant contends, and the Respondents apparently do not dispute, that the August 26, 2002 personal guarantees of Dave Turnbull and Nancy Turnbull ("Turnbull guarantees") were continuing and unlimited, which would mean that they secured all indebtedness of Ganin Homes to the Bank "now existing or hereinafter incurred or created," including the $200,000 line of credit evidenced by the August 27, 2002 promissory note, despite the fact that the August 27, 2002 promissory note does not state that the line of credit was secured by the pre-existing Turnbull guarantees.

In exchange for granting the Howard Deed of Trust to the Bank, Richard Howard and his wife received from Ganin Homes a resolution ("Resolution"), dated September 11, 2002, that provided as follows:

> RESOLVED: Assets committed to secure a line of credit for Ganin Homes, LLC by Dick & JoAnn Howard in the amount of $150,000 and Dave and Nancy Turnbull in the amount of $50,000 will be treated in the following manner:
>
> 1.) 5% annual interest will be paid to each party on 100% of the asset committed regardless of whether the line

---

**2.** The August 26, 2002 promissory note was not entered into evidence below, nor was it attached as an exhibit to the appeal.

**3.** Although they were introduced as trial exhibits, the personal guarantees were not included as exhibits to this appeal (although an unsigned portion of one of the guarantees appears as an attachment to a motion in the legal file). It is the appellant's responsibility to include trial exhibits that are necessary to our disposition of the appeal, Rule 81.12(e), and his failure to do so results in an assump-tion that the guarantee documents are immaterial to the appeal. Rule 81.16(c). The guarantees, however, are clearly not immaterial: they are in fact crucial to appellant's theory of the case. Appellant's failure to attach documents that are critical to his appeal would ordinarily be grounds for dismissal. However, since we would affirm the trial court's judgment even if the guarantees had been attached to the appeal, we will exercise our discretion and address the merits.

of credit is ever accessed or not for the term of commitment.

2.) Interest payments will be made at 6–month intervals beginning with the first payment on Feb. 28, 2003.

3.) In the event that the line of credit is accessed for operating costs associated with Ganin Homes, all the other assets of Ganin Homes immediately become attached for the same amount to insure payment of the line of credit and release of the pledged asset.

4.) In the event that something unforeseen occurs and Ganin Homes does not continue operating, it is agreed by all the partners of Ganin Homes that sufficient assets of Ganin Homes necessary to clear any claim on Dick and JoAnn Howard's property will be liquidated and the proceeds applied towards the secured line of credit. The partners of Ganin Homes will then take whatever action necessary to release Dick and JoAnn Howard's asset immediately from the line of credit.

5.) The assets will be used to secure the line of credit for a period not to exceed 18 months at which time the line of credit will be retired and all assets will be released.

The Resolution was signed by Greg Howard in his capacity as managing member of Ganin Homes. However, Greg Howard had no authority to speak or act for the Respondents in their individual capacities. In fact, the Turnbulls specifically refused to personally guarantee Howard's pledge of collateral evidenced by the Howard Deed of Trust.

The line of credit was not retired within eighteen months. Pursuant to the terms of the Resolution, Ganin Homes made interest payments to Richard Howard, totaling $11,500.

Sometime in 2005, Ganin Homes defaulted on its indebtedness to the Bank. The Bank threatened to exercise its rights under the Howard Deed of Trust and the Turnbull Deed of Trust, which included foreclosure. To avoid foreclosure of his property, Richard Howard paid the Bank $150,000 in exchange for a release of the Howard Deed of Trust. Likewise, the Turnbulls paid the Bank $50,000 in exchange for a release of the Turnbull Deed of Trust. In return, the Bank cancelled the August 27, 2002 promissory note. However, at the time of trial, Ganin Homes remained indebted to the Bank for a principal amount of $387,517.50.

Greg Howard abandoned any managerial role in Ganin Homes in 2005, and he has contributed nothing to pay down the company's debt. By contrast, Dave and Nancy Turnbull are still operating Ganin Homes in an effort to liquidate its assets and pay its debts. In addition, the Turnbulls paid, from their own funds, the following on behalf of Ganin Homes: $42,667 in interest payments, $14,267 to clear liens from Ganin Homes properties, and $82,116 in various other expenses.

Richard Howard sued the Respondents for unjust enrichment. Howard argued that, because the Turnbull guarantees were continuing and unlimited, they were responsible for the $200,000 line of credit obtained on August 27, 2002, including the $150,000 secured by the Howard Deed of Trust, and thus the Respondents were unjustly enriched in that their debt to the Bank was decreased by $150,000 when Howard paid the Bank $150,000 in exchange for a release of the Howard Deed of Trust. On February 20, 2009, the circuit court held a bench trial on Howard's claim. On March 31, 2009, the circuit court entered judgment for the Respondents, finding that the evidence did not

support a finding of at least two of the three elements required to support awarding a remedy based on the doctrine of unjust enrichment. First, the benefit was not conferred by the plaintiff on the defendants because the benefit was conferred directly upon Ganin Homes, not the defendants. Second, even if a benefit had been conferred on the defendants, the acceptance and retention of the benefit by them would not render the retention inequitable because Howard pledged his property to the Bank "voluntarily, deliberately, and without complaint" and received "precisely what [he] bargained for." This appeal follows.

### Standard of Review

In a court-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it misstates or misapplies the law, or it goes against the weight of the evidence. *Conseco Fin. Servicing Corp. v. Mo. Dep't of Revenue*, 98 S.W.3d 540, 542 (Mo. banc 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32.

### Legal Analysis

Howard lists five points on appeal, but he concedes in his reply brief that they can be consolidated into a single point. Howard argues that the trial court erred in entering judgment for the Respondents because he established the necessary elements of his unjust enrichment claim and because no other circumstances apply that

would prevent him from recovering under an unjust enrichment theory. We disagree.

To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances. *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo.App. E.D.2006); *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App. W.D.2000). Even if a benefit is "conferred" and "appreciated," if no injustice results from the defendant's retention of the benefit, then no cause of action for unjust enrichment will lie. *White v. Pruiett*, 39 S.W.3d 857, 863 (Mo.App. W.D. 2001). Unjust retention of benefits only occurs when the benefits were "conferred (a) in misreliance[4] on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint." *Graves*, 15 S.W.3d at 62 (quoting *Rolla Lumber Co. v. Evans*, 482 S.W.2d 519, 520 (Mo.App.1972) (internal quotation marks omitted).

In addition, "[t]here can be no unjust enrichment if the parties receive what they intended to obtain." *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo.App. S.D.2003). If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract. *Farmers New World Life Ins. Co. v. Jolley*, 747 S.W.2d 704, 707–08 (Mo.App. W.D.1988); 66 *Am.Jur. 2D Restitution and Implied Contracts* § 24 (1998).

---

**4.** "Misreliance," in this context, means mistake of fact. *Rolla Lumber Co. v. Evans*, 482 S.W.2d 519, 522 n. 1 (Mo.App.1972).

Further, a *voluntary* payment, made under a mistake of law but not fact, cannot be recovered in an unjust enrichment claim. *Am. Motorists Ins. Co. v. Shrock,* 447 S.W.2d 809, 811 (Mo.App.1969).

### 1. No benefit to the Respondents

■ The trial court found that the Howards conferred a benefit on Ganin Homes, not the Respondents. We agree.

■ For the purposes of unjust enrichment, the owners of a limited liability company do not receive a benefit when a third party pledges collateral[5] to secure a debt incurred by the company. *Beeler v. Martin,* 306 S.W.3d 108, 112–13 (Mo.App. W.D. 2010). In such cases, the benefit flows to the limited liability company itself, not to the owners of the company.[6] *Id.; see also JB Contracting, Inc. v. Bierman,* 147 S.W.3d 814, 820 (Mo.App. S.D.2004) (holding that, for the purposes of plaintiff's unjust enrichment claim, the benefit of improvements to property owned by a limited liability company did not flow to the defendant, who owned the company).

*Beeler* is directly on point. There, the parents of one of the owners of a limited liability company pledged their $46,000 certificate of deposit as collateral for a loan made to the company. 306 S.W.3d at 109–10. The owners of the company guaranteed the loan in their individual capacities. *Id.* at 109–10. The company defaulted, the creditor bank seized the certificate of deposit, and the parents sued the owners of the company for indemnity and unjust enrichment, seeking to recover the entire $46,000. *Id.* at 110. The trial court found that the owners had been unjustly enriched only to the extent they disbursed company assets to themselves that were worth more than the company's liabilities.[7] *Id.* at 112. However, with respect to the remainder of the $46,000, the trial court found that the individual owners had not been unjustly enriched. *Id.* at 112. We affirmed, holding that, in pledging the certificate of deposit as collateral for the loan to their son's company, the parents had benefitted the borrower, i.e., the company, not the owners of the company, even though the owners guaranteed the loan in their individual capacities. *Id.* at 112–13. To the extent the *company's* assets (in excess of its liabilities) were in the defendants' hands, the parents could recover; however, the individual owners were not otherwise personally benefitted by the pledge, and therefore no further recovery could be had from them by way of an unjust enrichment claim. *Id.* at 112–13.

■ It is true that, if owners of a limited liability company have personally guaranteed the company's debt, and if the plaintiff has paid a portion of the company's debt, a cause of action may or may not lie against the owners *for contribution*

---

5. Howard contends that he only "conferred a benefit" when he actually paid the Bank $150,000 in exchange for a release of the Howard Deed of Trust. The contention is meritless. Howard testified that his property was worth well in excess of $150,000. Under the Howard Deed of Trust, the Bank, upon Ganin Homes's default, could have foreclosed on the property and collected $150,000 even if Howard had not paid for the release. Thus, the fact that Howard paid the $150,000 is irrelevant, for he had already conferred a $150,000 benefit on Ganin Homes the moment he executed the Howard Deed of Trust.

6. Or, in the Turnbulls' cases, the owners of a separate limited liability company that in turn owned a part of the limited liability company that received the loan.

7. No such facts are present here: Ganin Homes's assets are worth less than its liabilities, and Ganin Homes therefore has not (and could not) disburse left-over equity in the company to the Respondents.

*among co-sureties,* depending on whether the plaintiff unofficiously paid more than his or her proportionate share of a jointly owed debt. § 433.110; *Beeler,* 306 S.W.3d at 112–13 n. 5; RESTATEMENT OF RESTITUTION, § 84 (1937). It is also true that, if one of two secondary obligors occupies the position of a *sub*-surety to the other's position of *principal* surety, reimbursement may be had, under certain circumstances, from the latter when the former discharges the obligation. RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTEE, §§ 53, 59–60 (1996).[8] However, a circuit court does not err, when, as here, it declines to advocate for the plaintiff by treating his unjust enrichment claim as one for contribution or subsuretyship. *See Beeler,* 306 S.W.3d at 111–12 n. 4 (holding that the trial court did not err in refusing to treat plaintiff's claim for indemnity as one for contribution).

Thus, the trial court did not err in finding that, for the purposes of Howard's unjust enrichment claim, the Respondents did not directly benefit by Howard's execution of the Howard Deed of Trust as collateral for the loan made to Ganin Homes. *Id.*

### 2. Any enrichment was not unjust

 The trial court also found that, even if Howard had conferred a benefit on the Respondents, Howard could not recover because any benefit was conferred "voluntarily, deliberately, and without complaint" and because Howard received "precisely what he bargained for." As such, the court found that the Respondents were not unjustly enriched. We agree.

 A venture voluntarily entered into, with known risks and with the expectation of a profit, cannot be compensated

for via a claim for unjust enrichment. *Jolley,* 747 S.W.2d at 707 (holding that plaintiff's entering into an agreement with known risks precluded recovery under an unjust enrichment claim when an anticipated contingency occurred); *Bierman,* 147 S.W.3d at 820 (holding that, when the benefits to the defendant were created by the plaintiff *in the expectation of receiving a profit,* a cause of action for unjust enrichment did not lie). When a person enters into a potentially risky venture, it is simply not unjust for him to bear the adverse consequences of the risk, given that he surely would have accepted the beneficial consequences had they materialized. *Jolley,* 747 S.W.2d at 707; *Bierman,* 147 S.W.3d at 820. In other words, under such circumstances, the retention of a benefit by the defendants would not have been inequitable.

In *Jolley,* the plaintiff's insured had disappeared, and he was presumed dead. 747 S.W.2d at 704–05. The plaintiff agreed to settle with the presumed decedent's wife after she had filed suit on her husband's life insurance policy. *Id.* at 705. The settlement provided that the wife would repay the settlement proceeds ($250,000), plus interest and attorneys' fees, should her husband be found alive. *Id.* However, the insurance company entered into no agreement with the wife's attorney, despite knowing that he would be paid a percentage of the settlement proceeds pursuant to his contingency fee agreement with the wife. *Id.* at 706. The husband was found alive, and the insurance company (having exhausted its remedies against the wife but still being owed $113,000 plus interest and attorneys' fees) sued the attorney for unjust enrichment. *Id.* at 705–06. The circuit court entered summary

---

**8.** Although subsuretyship is recognized by the RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTEE, we express no opinion on whether we would recognize the theory had it been properly pled.

judgment for the defendant, and we affirmed. In doing so, we noted that "[t]he situation is one of a contract in which one of the parties ... was unable completely to perform. [The attorney] is a third person, not a party to the contract, and not the insurer of the promise of its client." *Id.* at 706. Further, we held that, in entering into the settlement agreement, with the knowledge that the insured could have been alive, the plaintiff "assume[d] the risk of payment in order to avoid difficulty which might arise from nonpayment. In such case, the [plaintiff] is not entitled to restitution" beyond the specific protections that were built into the settlement agreement. *Id.* at 707.

Likewise, Howard assumed the risk inherent in his execution of the Howard Deed of Trust, with full knowledge that Ganin Homes could default on its debt and in the expectation that he would receive the benefits of the Resolution. Had the venture gone as planned, Howard would have received regular interest payments on his property, the use of which he continued to enjoy; his brother's company would have succeeded, which was apparently a valuable consideration to Howard; and Ganin Homes would have secured the release of the Howard Deed of Trust at no cost to Howard. Just as it would not have been unjust for Howard to have reaped these benefits, it is not unjust for him to bear the adverse consequences of the risk he voluntarily undertook. *See Jolley,* 747 S.W.2d at 707; *Bierman,* 147 S.W.3d at 820.

Howard contends that the above principles of law do not apply because, in reliance on the Resolution and the personal guarantees, he mistakenly believed that the Turnbulls were required to repay him and that, as a consequence, he did not pledge his property "voluntarily" and he did not receive what he expected (repayment).

■■■ However, Howard's alleged mistake does not permit him to recover. While a mistake of fact may affect the voluntariness of a payment, a mistake of law does not. Rather, a voluntary payment, made under a mistake of law but not fact, cannot be recovered in an unjust enrichment claim. *Shrock,* 447 S.W.2d at 811 ("The rule of law is well settled that where money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made ... under a mistake of law."). Here, Howard knew that the Respondents had signed no personal guarantees to him; he knew that the Resolution was not signed by the Respondents in their individual capacities (or in any capacity); he knew that there was a possibility that Ganin Homes would default on its debt and that the Bank would exercise its rights under the Howard Deed of Trust. That Howard was under the erroneous impression that he could enforce either the Turnbulls' personal guarantees (which were executed in favor of the Bank, not Howard) or the Resolution (which bound Ganin Homes, not the Respondents) is irrelevant. Howard's mistake was one of law, not fact, and such a mistake does not insulate him from the principles stated above, which bar recovery for unjust enrichment under circumstances such as this. *See Shrock,* 447 S.W.2d at 811; *Jolley,* 747 S.W.2d at 707; *Bierman,* 147 S.W.3d at 820.[9]

9. Howard also argues that *Jolley* does not apply because *Jolley* concerned a contract, whereas Howard entered into no contract with the Respondents. However, the plaintiff in *Jolley* had no contract with the defendant either, for the subject contract was only between the insurer and the defendant's client. 747 S.W.2d at 705–06. The rule is that, where "a third person benefits from a contract entered into between two other persons,

As such, Howard's voluntary pledge of his property, with knowledge of the potential risks, in the expectation of a profit, and under no mistake of relevant fact, renders the principles of unjust enrichment inapplicable to the facts of this case.[10]

### Conclusion

For the reasons stated above, we deny Howard's points on appeal and affirm the trial court's judgment in all respects.

LISA WHITE HARDWICK and CYNTHIA L. MARTIN, JJ., concur.

---

in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution." 66 *Am.Jur. 2D Restitution and Implied Contracts* § 32 (1998) (emphasis added). No misleading act on the defendant's part was alleged in *Jolley*, and no such act is alleged here. Accordingly, even if the defendants benefitted from, but were not parties to, the agreement Howard made with Ganin Homes (evidenced by the Resolution), *Jolley* would still apply, for the defendant in that case was also a third party beneficiary of, and not a party to, the subject agreement.

10. Again, based on the Resolution, Howard may or may not have had a valid contract claim against Ganin Homes. However, unjust enrichment cannot be used to make the owners of a limited liability company liable for the company's obligations, absent circumstances that would justify piercing the company's corporate veil. *Beeler*, 306 S.W.3d at 111 n. 3. Therefore, Howard cannot simply recast his potential breach of contract claim against Ganin Homes as a claim for unjust enrichment against the owner and managing members of that entity.